STATE OF NORTH CAROLINA v. MICHAEL LEROY WORKMAN AND GODOSAKAHI ANTONIO WILKINS

No. 4A83

(Filed 3 November 1983)

**1. Rape and Allied Offenses § 5— first degree sexual offense—acts against victim's will—sufficiency of evidence**

In a prosecution for a first degree sexual offense, the State's evidence was sufficient to permit the jury to find that the acts complained of were "by force and against the will of the other person" where there was plenary evidence tending to show that defendants threatened the victim with both a pencil and a razor; that defendants one at a time forced the victim back to a jail cell and held him while forcing him to commit fellatio; and that the victim was afraid not to comply with defendants' orders and he was afraid for his life.

**2. Rape and Allied Offenses § 5— first degree sexual offense—use of deadly weapon—sufficiency of evidence**

The State's evidence in a prosecution for first degree sexual offense was sufficient to be submitted to the jury on the issue of whether a pencil and a

safety razor used by defendant prison inmates constituted dangerous or deadly weapons or were articles which the victim reasonably believed to be dangerous or deadly weapons where it tended to show that one defendant threatened to kill the victim with the pencil and threatened to stab him in the eye and heart with it; that the victim was afraid such defendant would kill him with the pencil; that the second defendant held the razor up to the victim's neck and threatened him; and that, although safety razors distributed to inmates could do little more than "nick" a person, parts of the razor could become a deadly weapon if the razor were torn apart.

APPEAL by defendants from *DeRamus, Judge,* at the 13 September 1982 Session of FORSYTH County Superior Court.

Both defendants were charged in indictments, proper in form, with the commission of first-degree sexual offense against Joseph Frank Flippin. Each of the defendants entered a plea of not guilty. The cases were consolidated for trial.

The State offered evidence which tended to show that on 12 May 1982, while they were imprisoned in the Forsyth County jail, Joseph Flippin, James Cameron, and defendants were removed at about 8:40 a.m. from their individual cells and taken to a shower area. According to the testimony of both Flippin and Cameron, after the four men had showered, defendant Workman threatened to kill Flippin with a pencil and forced him to perform fellatio. Subsequently, defendant Wilkins threatened to cut Mr. Flippin's ear off with a safety razor and also forced him to perform fellatio.

The guards returned to the shower cell at approximately 11:20 a.m. to take the men back to their individual cells. Sergeant Thomas Spillman, a deputy sheriff employed at the jail, testified that, on the way back to the cell, Flippin told him about the attacks. After asking Cameron about it, Spillman informed his captain who in turn asked Spillman to call for a detective. The investigation was then turned over to Officer F. G. Crater who interviewed Flippin and Cameron shortly following the incident.

Crater's testimony substantially corroborated the testimony of the other State's witnesses regarding what transpired in the shower cell.

Defendants presented no evidence. As to each defendant, the jury returned a verdict of guilty as charged. The trial judge imposed on each defendant a mandatory life sentence and defendants appeal as a matter of right.

*Rufus L. Edmisten, Attorney General, by William F. Briley and Robert L. Hillman, Assistant Attorneys General, for the State.*

*Adam Stein, Appellate Defender, by Malcolm Ray Hunter, Assistant Appellate Defender, for defendant appellants Workman and Wilkins.*

BRANCH, Chief Justice.

Defendants assign as error the trial court's denial of their motions to dismiss the charge of first-degree sexual offense on the ground that there was insufficient evidence of the essential elements of the offense to permit the jury to find defendants guilty. Specifically, defendants contend that the State failed to prove two essential elements: (1) that the sex act was without the consent of the alleged victim; and (2) that defendants displayed or employed a deadly weapon.

The crime of first-degree sexual offense is defined in G.S. 14-27.4, which provides in pertinent part:

(a) A person is guilty of a sexual offense in the first degree if the person engages in a sexual act:

\* \* \* \*

(2) With another person by force and against the will of the other person, and:

a. Employs or displays a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon;

\* \* \* \*

[1] In support of their contention that the State did not show that the act complained of was against the will of the victim, defendants maintain that Mr. Flippin actually encouraged them to engage in the sexual acts. Defendants argue that Mr. Flippin made certain provocative advances towards them prior to the acts, and also that the victim made no attempts to flee or to defend himself against the attacks. Defendants point specifically to the following testimony elicited from Mr. Flippin on cross-examination.

Q. Were you, at any time that morning, did you sort of feel on any of those gentlemen there?

A. Huh?

Q. Sort of put your hand on them or anything?

A. Yeah, like that.

Q. Were you sort of putting your hands on their legs and stuff like that?

A. Yeah, yeah.

However, there was also evidence that Flippin was a highly nervous individual who had less than a second grade education. Sergeant Spillman and Officer Crater both testified that Mr. Flippin had a tendency to touch people when he talked to them, and that it was just his way of showing friendship. Furthermore, James Cameron, the fourth man in the shower cell and an eyewitness, testified as follows:

Q. Did you notice that Mr. Wilkins was naked?

A. I did notice.

Q. But you didn't see Mr. Flippin watching him?

A. No.

Q. Did you ever see Mr. Flippin touch him?

A. I saw him touch him once on the leg like he said and he told him not to do it no damn more and he hit him upside the head and Joe didn't bother him no more.

Finally, Mr. Flippin specifically denied that his touching was intended as a sexual advance. His testimony was as follows:

Q. Did you say anything when you touched him on the leg?

A. Yeah, he said something to me. He said don't you do that no more, he said I'll smack you and he hit me like that, smacked me. I said I was just trying to be nice to you.

Q. You were just going to be nice when you touched him on the leg?

A. Yes.

*    *    *    *

Q. When you touched him, did he pull out a razor or did he just slap you?

A. Slapped me, I think.

Q. Did you touch him again?

A. No.

Q. Did you touch Mr. Workman?

A. No.

Q. Did you touch Mr. Cameron?

A. No.

Q. You just touched the one with no clothes on, didn't you?

A. Yeah.

Q. Why did you pick him?

A. I just wanted to touch him on the leg.

Q. You just felt friendly toward him?

A. Yeah.

Defendants also quote a portion of Flippin's testimony in which he states he did not try to resist his attackers and he just "let it happen." However, there is plenary evidence in the record that defendants threatened the victim with both a pencil and a razor; that defendants one at a time forced him back to a cell and held him while forcing him to commit fellatio; and that the victim was afraid not to comply with defendants' orders and he was afraid for his life.

The test of the sufficiency of the evidence in a criminal case is whether there is substantial evidence of each essential element of the offense charged, or of a lesser included offense of that charged. *State v. Roseman*, 279 N.C. 573, 184 S.E. 2d 289 (1971); *State v. Mason*, 279 N.C. 435, 183 S.E. 2d 661 (1971).

The evidence is to be considered in the light most favorable to the State; the State is entitled to every reasonable intendment and every reasonable inference to be

State v. Workman

drawn therefrom; contradictions and discrepancies are for the jury to resolve and do not warrant dismissal . . . .

*State v. Powell*, 299 N.C. 95, 99, 261 S.E. 2d 114, 117 (1980).

In the instant case, taking the evidence in the light most favorable to the State, there was ample evidence from which a jury might find that the offenses committed were "by force and against the will of the other person." Any contradictions and discrepancies were for the jury and the trial judge correctly submitted the case to them for resolution.

[2] Defendants also contend that the State failed to prove that they employed or displayed "a dangerous or deadly weapon or an article which the other person reasonably believes to be a dangerous or deadly weapon."

Defendant Workman maintains that he was convicted on the theory that he used a pencil to threaten Flippin. He argues, however, that no pencil was ever found at the scene of the incident; nor was one ever recovered from a defendant. Furthermore, the victim was never actually hurt by the pencil. In summary, defendant Workman maintains that the evidence was insufficient to support a jury finding that a pencil was a dangerous or deadly weapon, or that Flippin reasonably believed it to be.

There was also evidence that the safety razor, as it was distributed to the inmates, was not particularly dangerous. Sergeant Spillman testified that the blade was locked into the razor and that the only damage the razor could do was to "nick" a person. Wilkins argues, like Workman, that the evidence was not sufficient to submit to the jury the question of whether the razor was dangerous or deadly, or whether Flippin reasonably believed it to be so.

We have consistently held that a deadly weapon does not have to be one that kills, and in *State v. Sturdivant*, 304 N.C. 293, 283 S.E. 2d 719 (1981), we made the following observation:

No item, no matter how small or commonplace, can be safely disregarded for its capacity to cause serious bodily injury or death when it is wielded with the requisite evil intent and force. *See, e.g., State v. Joyner*, 295 N.C. 55, 243 S.E. 2d 367 (1978) (Pepsi-Cola bottle); *State v. Strickland*, 290 N.C.

169, 225 S.E. 2d 531 (1976) (plastic bag); *State v. Perry*, 226 N.C. 530, 39 S.E. 2d 460 (1946) (brick); *State v. Heffner*, 199 N.C. 778, 155 S.E. 879 (1930) (blackjack); *State v. Smith*, 187 N.C. 469, 121 S.E. 737 (1924) (baseball bat); *State v. Beal*, 170 N.C. 764, 87 S.E. 416 (1915) (rock); *State v. Craton*, 28 N.C. 164 (1845) (pine stub); *State v. Whitaker*, 29 N.C. App. 602, 225 S.E. 2d 129 (1976) (broom handle, nail clippers).

*Id.* at 301, 283 S.E. 2d at 725 n. 2. We have likewise held that where there is a question as to a weapon's deadly or dangerous nature, it is properly submitted to the jury. *State v. Watkins*, 200 N.C. 692, 158 S.E. 393 (1931).

In the instant case, the victim testified several times that defendant Workman threatened to stab him with the pencil, threatened to kill him, and threatened to stab him in the eye and in the heart with it. He also testified that he was afraid Workman would kill him with the pencil. Mr. Cameron testified that "Mr. Workman took the pencil and put it in Joe's chest and said if you don't suck my thing, I'm going to take this pencil and stab you." Cameron also stated that Workman threatened to stab Flippin in his left eye and that "Joe said I am scared." Finally, although Sergeant Spillman testified that no pencil had been found, and that the cell had been locked in order to protect any evidence that might be there, Officer Crater testified that when he arrived on the scene to investigate, the shower cell had been unlocked and cleaned and the mattress had been removed.

Likewise, Flippin testified that Wilkins held the razor up to his neck and threatened him. James Cameron testified that defendant Wilkins "took the razor into the cell and he brought it back out and he laid it on the bars and he held it to Joe's—I think it was his left ear—and he said if you don't give me a blow job, I'll cut your ear off and Joe said please don't." Finally, while Sergeant Spillman stated that the safety razors routinely distributed to inmates could do little more than "nick" a person, he also testified that if the razor were "torn apart and damaged, parts of it could become a deadly weapon."

With the well-settled rule regarding the test of the sufficiency of the evidence in mind, and considering the evidence in the light most favorable to the State, as we must, we hold that the evidence in this case was sufficient to submit to the jury

the questions of whether the pencil and the razor constituted dangerous or deadly weapons or were articles which Mr. Flippin "reasonably believed to be . . . dangerous or deadly . . . ." *See State v. Johnson,* 304 N.C. 680, 285 S.E. 2d 792 (1982) (sufficient evidence for jury to find ballpoint pen was a dangerous or deadly weapon). Any discrepancies and inconsistencies in the evidence, and matters of credibility, are to be resolved by the jury. *State v. Powell,* 299 N.C. 95, 261 S.E. 2d 114 (1980).

There was sufficient evidence of each element of the offenses charged to permit the jury to convict defendants, and the trial court properly submitted the case to the jury. Defendants' assignments are overruled.

No error.