STATE OF NORTH CAROLINA v. CHARLES ALLEN GRIER

No. 471A84

(Filed 3 July 1985)

1. **Criminal Law § 40— unavailable witness—prior testimony—test for State's effort to locate**

   The test for whether the prosecution can admit a transcript of prior testimony for an unavailable witness is not that the prosecution must exhaust all conceivable means in the effort to locate the witness, but only that it undertake in good faith some reasonable, affirmative measures to produce the witness for trial.

2. **Constitutional Law § 65; Criminal Law § 40— unavailable witness—prior testimony—State's effort to locate sufficient**

   The recorded testimony of a witness at defendant's first trial for first-degree burglary and rape was properly admitted at defendant's second trial where the witness could not be located. The confrontation requirement that good faith efforts be made to locate the witness was satisfied by the repeated attempts of prosecutorial authorities to contact the witness at three known addresses where he could either be located or reached; repeated conversations and messages left with defendant's ex-wife; a visit to defendant's purported workplace; and the enlistment of the aid of the original district attorney who had had a good rapport with the witness. Moreover, there was evidence that the witness was afraid to testify because of an assault involving another member of his family and defendant's relatives.

BEFORE *Kirby, J.*, at the 9 April 1984 Criminal Session of Superior Court, MECKLENBURG County, defendant was convicted of first-degree rape and first-degree burglary. A sentence of life imprisonment was imposed for the first-degree burglary offense, and a sentence of life imprisonment was also imposed for the first-degree rape offense. Pursuant to N.C.G.S. § 7A-27(a), defendant appeals. Heard in the Supreme Court 11 April 1985.

Defendant was originally charged in true bills of indictment, proper in form, with first-degree burglary of the dwelling house of James Lee, located at 2026 Thomas Avenue, Charlotte, North Carolina on 22 September 1981 and the first-degree rape of Marie Cable Lee on the same date and at the same location. The defendant was subsequently convicted of these offenses before Judge Ferrell in Superior Court, Mecklenburg County on 17 February 1981, and received life sentences for each offense. Defendant appealed to this Court and these convictions were reversed and the matter remanded to the Superior Court, Mecklenburg County for a new trial. *State v. Grier*, 307 N.C. 628, 300 S.E. 2d 351 (1983).

The central issue in the reversal of defendant's earlier convictions was the use of polygraph evidence by the State. Upon retrial, and prior to a jury being empaneled, the trial court heard a motion on the part of the State to allow the introduction of a portion of the transcript from the earlier proceedings containing the testimony of State's witness, Ronnie James Easterling, on the ground that Easterling was unavailable to testify before the jury. The defendant's identity as the perpetrator had been an issue in the first trial and Easterling had testified to the effect that he had overheard the defendant telling someone that defendant had been involved in a "lick" (a robbery) on Thomas Avenue.

The defendant opposed the State's motion and the trial court conducted a voir dire to determine the admissibility of the prior recorded testimony and particularly whether the witness was unavailable to testify. After hearing several witnesses presented by the State to demonstrate the efforts made by various members of the Mecklenburg County District Attorney's Office and Sheriff's Office, the trial court found that the State had made a good faith effort to locate the witness and that he was unavailable. Accordingly the court ruled that the State would be permitted to introduce portions of the transcript of Easterling's prior testimony,

after the elimination of any such portions to which objections were made by defense counsel and sustained by the trial court. Easterling's prior recorded testimony was presented to the jury during the trial by means of reading from the transcript, after it had been authenticated by the court reporter who reported the first trial. The record does not indicate that any other objections to any specific questions or answers were lodged by the defendant.

In addition to Easterling's testimony, the State presented evidence which tended to show that on 22 September 1981 at approximately 12:45 a.m., James Lee was watching television in the well-lit living room of his duplex apartment located at 2026 Thomas Avenue, Charlotte, North Carolina. Suddenly, a locked storm door to the living room was forced open and a tall black male entered, placed a pistol to Mr. Lee's head, and demanded his money. Mrs. Lee, who had been sleeping in her bedroom down the hall from the living room, was then awakened when her miniature poodle jumped from her bed and ran to the living room. Mrs. Lee came to the living room, but her husband told her to go back. The intruder then requested Mrs. Lee to come into the living room. Next, Mr. and Mrs. Lee were forced back into Mrs. Lee's bedroom and both were ordered to lie down upon the bed. While pointing the shotgun at Mrs. Lee and her husband, the intruder forced Mrs. Lee to have sexual intercourse with him.

After consummation of the rape, the intruder forced Mr. Lee to accompany him to another room of the house looking for valuables. While the intruder was looking around the bedroom, Mr. Lee reached behind a curtain for his shotgun, loaded it and went into the hall. There, Mr. Lee saw the intruder coming out of Mrs. Lee's bedroom with a portable television set. When Mr. Lee pointed the shotgun at the intruder, the man fell to the floor, rolled over, and knocked the shotgun upwards, causing it to discharge into the ceiling. Mr. Lee then ran back to his bedroom and the intruder got up, ran to the front door with the television, and as he went out of the door, fired three shots back toward the bedroom. Mr. Lee than ran to the front porch and fired a second shot, missing the intruder as he fled up the street.

Mr. and Mrs. Lee described the intruder as a black male with an "Afro hairdo" and bearded face. They stated that the intruder

was wearing white pants and a white coat trimmed in red. Mr. Lee described the intruder as being six feet eight inches tall; whereas Mrs. Lee described him as six feet tall. Both assisted the police in making a composite of the intruder. A few days after the burglary and rape, Mr. and Mrs. Lee were unable to identify the intruder from a photographic lineup. However, Mrs. Lee expressed the opinion that she could identify the intruder from a physical lineup. Thereafter on 2 October 1981, Mrs. Lee identified the defendant from a physical lineup, while Mr. Lee was unable to do so. An officer who conducted the lineup testified that the defendant was five feet nine inches tall.

Mr. Lee had identified a hair comb or "Afro pick-comb" that was found in his home after the incident. The hairs taken from the comb were found to be consistent with known hair samples taken from the defendant by a criminologist of the Microanalysis Section of the Charlotte-Mecklenburg Crime Laboratory.

The presence of semen was detected on Mrs. Lee's dress and the sheet on her bed. A PGM (enzyme) test of the semen on the sheet revealed a type 2-1. A test of the semen on Mrs. Lee's dress showed a weak type A and type 2-1 in the PGM grouping. Blood grouping tests of the defendant showed that he had a type A in an ABO grouping test and type 2-1 in a PGM grouping test. Blood grouping tests of Mrs. Lee revealed a type O in the ABO grouping and type 1-1 in the PGM grouping. Approximately twelve percent of the population has an ABO type A and a PGM type 2-1 in blood groupings.

The State also presented evidence by way of the transcript of the former trial that a few days after the rape, on 28 September 1981, Ronnie Easterling was interrupted by the loud conversation of the defendant with another person. At the time, Easterling was using a pay telephone near Polk's store on the corner of Pegram Street. The witness overheard the defendant say that he had made a "lick" (a robbery) on Thomas Avenue and that he was going there to get a little money box and shotgun. Easterling had also overheard the defendant say that the incident had been reported on television, that the old man had shot at him, and that some buckshot had brushed across his head.

The defendant presented evidence in the nature of an alibi. He testified that on the evening in question, he was at his moth-

er's apartment with his girlfriend, his brother and his brother's girlfriend. Defendant further testified that he had never been to the Lees' home, had never spoken with them, did not sexually assault Mrs. Lee and did not burglarize the Lee home. On cross-examination, defendant stated that the Lees' home was less than a mile from his own residence on Allen Street. Defendant admitted to having been convicted in the past of common law robbery as well as some other offense.

The defendant also presented the corroborative testimony of his now deceased sister, Shirley Howard, by way of the transcript of his former trial. However, the reading of Shirley Howard's testimony to the jury was not taken down by the court reporter at the subsequent trial, was not made a part of the transcript and is therefore not contained in the record on appeal.

The jury, after hearing arguments of counsel and after being instructed by the court, deliberated and returned verdicts of guilty as charged on both counts. At the sentencing phase of the trial, the trial judge found two factors in aggravation and no factors in mitigation of punishment for the first-degree burglary offense and imposed a sentence of life imprisonment. For the first-degree rape offense, a life term was also imposed. The trial court failed to specify that the sentences were to run consecutively; therefore, defendant's two life sentences are to run concurrently. N.C.G.S. § 15A-1354(a).

*Lacy H. Thornburg, Attorney General, by William B. Ray, Assistant Attorney General, for the State.*

*Fritz Y. Mercer, Jr., for defendant appellant.*

MEYER, Justice.

The sole issue presented for review is whether the trial court erred by allowing into evidence, over the defendant's objection, that portion of the transcript of evidence at defendant's former trial containing the testimony of State's witness Ronnie Easterling, who was not available to testify at defendant's subsequent trial for the same offenses. It is the defendant's contention that the witness was available and that the State failed to make the "good faith effort" to locate him prior to trial as required before this form of hearsay evidence may be admitted against a defend-

ant in a criminal action under the state and federal constitutions. For the reasons set forth below, we conclude that the prior recorded testimony of the unavailable witness was properly admitted into evidence at the defendant's second trial for the burglary of the Lee residence and the rape of Mrs. Lee and affirm the convictions and sentences imposed as a result of defendant's new trial.

As a general rule, the recorded testimony of a witness in a former trial will not ordinarily be admitted as substantive evidence in a later criminal trial as the prior testimony is considered hearsay, the admission of which would violate the accused's right of confrontation guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution. If possible, the witness himself must be produced to testify *de novo. Ohio v. Roberts*, 448 U.S. 56, 65 L.Ed. 2d 597 (1980); *Mancusi v. Stubbs*, 408 U.S. 204, 33 L.Ed. 2d 293 (1972); *Barber v. Page*, 390 U.S. 719, 20 L.Ed. 2d 255 (1968); *State v. Prince*, 270 N.C. 769, 154 S.E. 2d 897 (1967); *State v. Cope*, 240 N.C. 244, 81 S.E. 2d 773 (1954).

However, despite the "preference for face-to-face confrontation at trial" reflected by the Confrontation Clause, *Ohio v. Roberts*, 448 U.S. at 63, 65 L.Ed. 2d at 606, it has long been held that an exception to the confrontation requirement will be recognized where a witness is unavailable to testify, but has given testimony at a previous judicial proceeding against the same defendant, and was at that time subject to cross-examination by that defendant. *Barber v. Page*, 390 U.S. at 722, 20 L.Ed. 2d at 258; *Mattox v. United States*, 156 U.S. 237, 39 L.Ed. 409 (1895); *State v. Graham*, 303 N.C. 521, 279 S.E. 2d 588 (1981); *State v. Smith*, 291 N.C. 505, 231 S.E. 2d 663 (1977); *State v. Jackson*, 30 N.C. App. 187, 226 S.E. 2d 543 (1976); *State v. Biggerstaff*, 16 N.C. App. 140, 191 S.E. 2d 426 (1972). As we stated in *State v. Graham*, "[i]n such a situation, the transcript of the witness' testimony at the prior trial may be admitted as substantive evidence against the same defendant at a subsequent trial. The justification for this exception is that the defendant's right of confrontation is adequately protected by the opportunity to cross-examine afforded at the initial proceeding." 303 N.C. at 523, 279 S.E. 2d at 509.

In *State v. Smith*, 291 N.C. at 524, 231 S.E. 2d at 675, Justice Huskins, writing for the Court, established the three-pronged test which must be met prior to the admission of the prior recorded

testimony of a witness at a subsequent trial as follows: "(1) The witness is unavailable; (2) the proceedings at which the testimony was given was [sic] a former trial of the same cause, or a preliminary stage of the same cause, or the trial of another cause involving the issue and subject matter at which the testimony is directed; and (3) the current defendants were present at that time and represented by counsel."

As to the first requirement, the United States Supreme Court has held that "a witness is not 'unavailable' for purposes of the . . . exception to the confrontation requirement unless the prosecutorial authorities have made a *good-faith effort* to obtain his presence at trial." *Barber v. Page*, 390 U.S. at 724-25, 20 L.Ed. 2d at 260 (emphasis added). *Accord Ohio v. Roberts*, 448 U.S. 56, 65 L.Ed. 2d 597; *Mancusi v. Stubbs*, 408 U.S. 204, 33 L.Ed. 2d 293; *California v. Green*, 399 U.S. 149, 26 L.Ed. 2d 489 (1970). "The lengths to which the prosecution must go to produce a witness . . . is a question of reasonableness." *California v. Green*, 399 U.S. at 189, n. 22, 26 L.Ed. 2d at 514 (Harlan, J., concurring). Ultimately, the question is whether the witness is unavailable *despite* good faith efforts undertaken prior to trial to locate and present that witness. *Ohio v. Roberts*, 448 U.S. at 74, 65 L.Ed. 2d at 613. The prosecution bears the burden of establishing this evidentiary predicate. *Id.* at 75, 65 L.Ed. 2d at 613.

The defendant in the present case challenges only the prosecution's showing as to the first prong of the three-prong *Smith* test, that of the unavailability of the witness Easterling. On the facts presented by the record, we hold that the trial court correctly determined that Ronnie Easterling's unavailability in the constitutional sense was established.

On voir dire to determine the admissibility of the prior recorded testimony of Ronnie Easterling, the State's evidence tended to show that the prosecution made repeated although unsuccessful attempts to locate Easterling and secure his attendance at defendant's upcoming trial. Calvin Murphy, an attorney and a former District Attorney involved in the initial prosecution of the defendant, testified that at the request of the District Attorney's Office, he attempted to locate the witness by calling an address where the witness formerly lived and by leaving a message for the witness to return his call. Easterling returned Mur-

phy's call at a time when Murphy was away from his office and left a message with Murphy's secretary, but Easterling could not be reached when his telephone call to Murphy was returned. Later, Murphy was given a Piedmont Courts address by the District Attorney's Office. When he went there, he saw a young lady, but the witness himself was not present. Murphy also testified that Easterling had been cooperative at the first trial and had voluntarily appeared, but that the District Attorney's Office was having difficulty in locating him for the subsequent trial.

Arthur F. Herron testified that he was employed by the Mecklenburg County Sheriff's Department as a Deputy Sheriff. Deputy Herron testified that he attempted to serve a subpoena on the witness at three different addresses during the month of February and also during the month of March 1984. Specifically, he had attempted to serve the subpoena during the morning shift on 28 March and again during the afternoon shift on 29 March. Deputy Herron encountered no one at the Louise Avenue or East 20th Street addresses provided to him, but did see the witness' girlfriend at the Piedmont Courts address in February.

Deputy Leroy Perry of the Mecklenburg County Sheriff's Department, who worked the shift opposite Deputy Herron, attempted to serve the subpoena on the witness at the residence of his mother at 821 East 20th Street on 28 March. The witness' mother told the deputy that the witness did not live there, that she did not know where he was, and knew nothing of the other two addresses given. Deputy Perry gave the mother information on a card with his name on it and told the mother that if the witness called or if she happened to get in touch with him, to give the witness his card and the information thereon.

Arthur Wholley testified that he was employed as an investigator with the District Attorney's Office for Mecklenburg County. Wholley was asked to locate Ronnie Easterling for the defendant's trial. He went through the files in his office and discovered three "leads" for the witness: his mother's address at 821 East 20th Street; a former wife, who worked as an Assistant Manager at the K-Mart on Independence Boulevard; and a sister who lived on Louise Avenue. Wholley prepared the subpoenas and discussed the leads and addresses where the witness might be located with the supervisor of the Sheriff's Office. Mr. Wholley

found the witness' ex-wife to be cooperative and he spoke with her several times. When the case came up in February, she told Wholley that the witness was living with a girlfriend at 206 Mc-Quay Street in Piedmont Courts. At Wholley's request, the witness' ex-wife sent a message to the witness requesting him to call the District Attorney's Office regarding the defendant's case, but Easterling never called. Wholley had similar conversations with Easterling's ex-wife in March and was told that Easterling was afraid to contact the District Attorney's Office or to testify because of an assault involving a relative of the witness and the defendant's relatives.

In addition to these efforts, Wholley had twice gone to the address at 821 East 20th Street, but found no one at home. He had also been informed by the witness' ex-wife that Easterling was working on a construction job for the new Marriott Hotel on Tryon and Trade Streets and went to this location, but neither the foreman nor anyone else at the construction site knew of the witness. Wholley had also requested Calvin Murphy to attempt to contact Easterling because Murphy had a good rapport with him, but these attempts also proved to be unsuccessful. Meanwhile, the defendant's case had been set for trial on four different occasions. Because the District Attorney's Office and the Sheriff's Department had ultimately been unsuccessful in locating the witness, he was never actually served with any of the subpoenas issued in connection with defendant's second trial.

At the conclusion of the voir dire, the trial court found that the State had made a good-faith effort to locate the witness and that the witness was unavailable. The court further ruled that the State would, therefore, be permitted to read the unobjected to portions of Easterling's testimony from the transcript of the defendant's prior trial for the benefit of the jury. Later, the trial court made more detailed findings of fact and conclusions of law regarding the admissibility of Easterling's prior recorded testimony. The trial court found, *inter alia,* that the officers of the Sheriff's Department of Mecklenburg County made repeated efforts to locate the witness at the addresses given their office by the District Attorney; that the District Attorney who originally prosecuted the case also assisted in attempting to locate Easterling by visiting one of the addresses; that various members of the Sheriff's Office had attempted to reach Easterling by telephone

and in person, but ultimately failed to contact him; and that in addition to the foregoing, an investigator for the District Attorney's Office made personal efforts to locate Easterling, including repeated conversations with Easterling's ex-wife and visits to Easterling's purported place of employment. Furthermore, the trial court specifically found that "Investigator Wholley, in the course of his efforts to locate the witness, was advised that one reason why the witness was not responding to any of the efforts to locate him was his fear of testifying a second time in the trial."

Based upon the foregoing findings of fact, the trial court concluded as a matter of law that the witness, Ronnie Easterling, "is unavailable and after repeated efforts and repeated continuances of the trial in this criminal case is not available for trial; that he testified under oath at a former trial of this same cause and was extensively cross-examined, and that the defendant, Charles Grier, was present at the time when the defendant [sic] previously testified under oath at the former trial." We find no error in the trial court's determination that the witness was unavailable in the constitutional sense.

[1] The rule of *Barber v. Page*, 390 U.S. 719, 20 L.Ed. 2d 255, relied upon by the defendant, requires only that the prosecutorial authorities make a "good-faith effort" to obtain the presence of the witness at trial. The lengths to which the prosecution must go in that effort is a question of reasonableness. *See California v. Green*, 399 U.S. 149, 172, 26 L.Ed. 2d 489, 504 (Harlan, J., concurring). The defendant in this case argues that although the authorities made some efforts to locate Easterling, they did not do enough in that regard and that other measures were at their disposal which were never effectuated. The test, however, is not that the prosecution must exhaust all conceivable means in the effort to locate a witness, but only that they undertake, in good faith, *some* reasonable, affirmative measures to produce the witness for trial. *Barber v. Page* involved a situation in which *no* affirmative measures were made to locate the witness in question. Here, in contrast, the prosecution made repeated efforts to locate Easterling at the various addresses they had for him both in person and by telephone. That the witness remained unavailable *despite* these repeated efforts indicates neither a lack of good faith on the part of the prosecution nor a lack of reasonable affirmative measures undertaken to locate Easterling.

In *Ohio v. Roberts*, 448 U.S. 56, 65 L.Ed. 2d 597, the Supreme Court held that a good faith effort on the part of the prosecution was demonstrated by evidence showing that the prosecutor had served the witness with five subpoenas at her parents' home over a period of several months and had discussed the matter with her parents, who were also unable to locate the witness. Although with the aid of hindsight, it seemed that other steps might have been undertaken in the effort to locate the witness, who had apparently run away from home, the test of reasonableness was satisfied under the circumstances by "investigation at the last-known real address, and . . . conversation with a parent who was concerned about her daughter's whereabouts." *Id.* at 76, 65 L.Ed. 2d at 614.

[2]   We also note that in this case, there was evidence that the witness had been cooperative at the first trial but was afraid to contact the District Attorney's Office or to testify by reason of an assault involving another member of the Easterling family and the defendant's relatives. The trial court specifically found that the witness was not responding to known efforts to locate him by reason of fear of testifying a second time in the trial of the defendant for these offenses. This creates a strong inference that a reason for the unavailability of the witness was in some measure due either to the connivance of the defendant or to the witness' actions to avoid the prosecution's attempt to locate him. It is well-established that a defendant is in no position to complain of his constitutional rights of confrontation and due process by the absence of a material witness if the witness' absence or unavailability is due to the procurement or connivance of the defendant. *Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244 (1878); *State v. Maynard*, 184 N.C. 653, 113 S.E. 682 (1922); *State v. Small*, 20 N.C. App. 423, 201 S.E. 2d 584 (1974).

Under the circumstances of this case, the repeated attempts made by the prosecutorial authorities to contact the witness at the three known addresses where he could either be located or reached; the repeated conversations and messages left with the defendant's ex-wife; the visit to defendant's purported workplace and the enlistment of the aid of the original District Attorney who had a good rapport with the witness, in the effort to locate and present him to testify were sufficient to satisfy the confrontation requirement that "good-faith efforts" be made to locate

Easterling before his prior recorded testimony be admitted into evidence against the defendant at his second trial. *See also State v. Keller*, 50 N.C. App. 364, 273 S.E. 2d 354, *disc. rev. denied and appeal dismissed*, 302 N.C. 400, 279 S.E. 2d 354 (1981) (due diligence in searching for the absent witness shown by issuance of subpoena in the county of the trial, but not in the county of the witness' residence, where witness had left home, and interviews with his neighbors, family and former associates failed to disclose his whereabouts).

In conclusion, we hold that Ronnie Easterling was unavailable to testify at defendant's second trial despite the good faith efforts of the prosecution to locate and present him to testify in person and that Easterling's prior recorded testimony was properly admitted into evidence. In the trial of the defendant, we find

No error.