STATE OF NORTH CAROLINA, PLAINTIFF v. THADDEUS SWINDLER, DEFENDANT

No. COA97-13

(Filed 17 March 1998)

1. **Evidence and Witnesses § 3170 (NCI4th)— corroborative testimony—more details**

   A detective's testimony as to what defendant's cellmate had told him was admissible to corroborate the cellmate's testimony even though it was more detailed than the cellmate's testimony.

2. **Evidence and Witnesses § 1409 (NCI4th)— testimony from previous trial—unavailability of witness—police detective's testimony**

   The trial court's decision to admit testimony by a witness from defendant's previous trial for first-degree murder was not prejudicial error where the State offered the testimony of a police detective that the witness was in the hospital following a heart attack and that it was his opinion that the witness was unavailable. N.C.R. Evid. § 804(b)(1).

3. **Evidence and Witnesses § 2870 (NCI4th)— cross-examination of defendant—statements made to cellmate**

   The trial court did not commit plain error by permitting the State to question defendant about certain statements he

1

allegedly made to a former cellmate, although statements in a letter written by the former cellmate had been held to be inadmissible hearsay, where the prosecutor asked only if defendant had made certain incriminating statements to the cellmate; the cellmate's letter was not offered or received in evidence; defendant was not asked about the contents of the letter or about anything the cellmate may have said; and there was no showing in the record that the questions were asked in bad faith.

**4. Evidence and Witnesses § 404 (NCI4th Rev.)— identification testimony—instructions—lighting conditions**

The trial court did not err by failing to give an instruction on witness identification that specifically mentioned the lighting conditions on the night in question where the instruction given was a correct statement of law and embodied the substance of defendant's requested instruction.

**5. Homicide § 226 (NCI4th)— first-degree murder—defendant as perpetrator—sufficient evidence**

There was sufficient evidence to show that defendant was the perpetrator of a first-degree murder where the evidence tended to show that a witness saw defendant with a gun just before the murder and heard him say that he was angry at an old man; another witness saw defendant following the victim, an old man, just before the killing; a witness positively identified defendant as the man running from the crime scene and other witnesses confirmed that defendant resembled the man seen running from the crime scene; and defendant told a fellow inmate that he had killed someone and had gotten rid of the gun and his clothing.

**6. Criminal Law § 560 (NCI4th Rev.)— mistrial—ineffective assistance of counsel not shown**

There was no error in the trial court's denial of defendant's motion for a mistrial on the ground that his counsel failed to cross-examine several witnesses about matters which would have exposed inconsistences in the State's case.

Judge MCGEE dissenting.

Appeal by defendant from judgment entered 7 June 1996 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 18 September 1997.

STATE v. SWINDLER

[129 N.C. App. 1 (1998)]

*Attorney General Michael F. Easley, by Special Deputy Attorney General Ronald M. Marquette, for the State.*

*Margaret Creasy Ciardella for defendant.*

LEWIS, Judge.

Defendant was convicted of first-degree murder. We find no error.

Shortly after 8:00 p.m. on the night of 27 October 1992, Mary Moore Keck heard gunshots and called 911. Several people rushed to the scene to find Joe Daniel Moore, the husband of Mary Moore Keck, lying on the sidewalk with four fatal gunshot wounds.

Four witnesses saw two black men running from the scene of the shooting. Joyce Brown positively identified defendant as one of the men she saw running from the scene. Ms. Brown heard the gunshots from inside her house, and moments later saw defendant pass within six feet of her, running away from where the body was found. Brown had seen defendant on the porch of a nearby house earlier that evening.

Two other witnesses testified that one of the men had very light skin, like defendant's. There was testimony that one of the men had defendant's build and height. A fourth witness testified that neither of the men looked like defendant, that both men were dark-skinned, and that one was dressed like a woman.

A cashier at a nearby Iloco convenience store testified that defendant purchased wine from her store between 7:30 and 7:45 p.m. She testified that defendant was wearing dark clothing and carrying a pistol. Defendant told her he was "pissed off at an old man."

Diagonal from the Iloco store is a Conoco store. A Conoco cashier testified that defendant purchased beer from her around 8:00 p.m. She stated that the victim, Joe Daniel Moore, was also in her store making a purchase at that time. She testified that when Moore left, defendant followed him.

Efrem Colson, who shared a jail cell with defendant as defendant awaited trial, testified that he overheard defendant tell other inmates that he had killed someone and that he was going to get away with it because "[t]hey can't prove it." Detective Michael Dunn testified that he interviewed Mr. Colson while Colson was in jail. Dunn said that Colson told him he overheard defendant's statements about killing someone.

STATE v. SWINDLER

[129 N.C. App. 1 (1998)]

Defendant testified that on the evening of 27 October 1992, before he visited the Iloco and Conoco stores, he was outside helping an older man who had fallen and hurt himself. This apparently occurred in the vicinity of Joyce Brown's house, because, defendant testified, Brown came out of her house and accused him of causing trouble.

Defendant testified that he was drinking on the night of the killing and that he visited the Iloco and Conoco stores. Defendant stated that he purchased some wine and took it to Jay Bryant's house. After some time, Perry Hunter arrived. Hunter was out of breath. Defendant testified that Hunter gave him money to go and buy some more wine. When defendant returned, he, Bryant, and Hunter got into a waiting taxicab. Police stopped the cab after it traveled one block and took defendant, Bryant, and Hunter to the scene of the shooting.

Defendant was charged with first-degree murder. After his first trial and conviction in 1993, the North Carolina Supreme Court vacated the judgment and ordered a new trial. Defendant was again convicted of first-degree murder and now appeals from this judgment.

[1] Defendant first argues that Detective Dunn should not have been allowed to testify about what Efrem Colson told him. Defendant argues that Dunn's testimony was not corroborative and violated his constitutional right to confront the witnesses against him. We disagree.

Colson testified that he overheard defendant say he killed "the motherf-----" and that the police could not prove it because they could not find the gun. Colson further testified he heard defendant describe what he was wearing the night of the murder and that defendant talked about someone in the store having seen his gun.

Dunn's testimony was offered to corroborate Colson's testimony. His testimony was similar to Colson's but was more detailed. Dunn stated that Colson told him defendant mentioned hiding some clothing somewhere between the scene of the shooting and the place he ran to. Dunn also testified that Colson said defendant was worried that the store clerk and maybe one of the witnesses saw him with the gun. Defendant argues that because Dunn's testimony included information that Colson's testimony lacked, it was impermissible hearsay and its admission was plain error.

Prior consistent statements of a witness are admissible for purposes of corroboration even if the witness has not been impeached.

*State v. Riddle*, 316 N.C. 152, 157, 340 S.E.2d 75, 78 (1986). When so offered, evidence of a prior consistent statement must in fact corroborate a witness's later testimony. However, there is no requirement that the rendition of a prior consistent statement be identical to the witness's later testimony. "[S]light variances in the corroborative testimony do not render it inadmissible." *State v. Covington*, 290 N.C. 313, 337, 226 S.E.2d 629, 646 (1976). There is no indication that Dunn's testimony was offered for any reason other than corroboration. Defendant's assignment of error is overruled.

[2] Defendant next argues that the trial court erred in admitting the testimony that Joyce Brown gave in defendant's first trial, and in admitting evidence to corroborate this testimony. We disagree.

At defendant's second trial, Detective Grubb testified that Joyce Brown was in the hospital following a heart attack. It was Detective Grubb's opinion that Brown was unable to testify. The trial court ruled that Brown was unavailable and that all of her prior sworn testimony was admissible.

"In all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. If a witness is unavailable to testify, her prior testimony is admissible if the party against whom the testimony is offered "had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." N.C.R. Evid. 804(b)(1). *See also Barber v. Page*, 390 U.S. 719, 722, 20 L. Ed. 2d 255, 258 (1968). A witness is unavailable to testify if, for example, she cannot attend the proceedings due to an existing physical illness or infirmity. N.C.R. Evid. 804(a)(4). However, a witness is not "unavailable" for purposes of this exception to the confrontation requirement unless the State has made a good-faith effort to obtain her presence at trial. *Barber*, 390 U.S. at 724-25, 20 L. Ed. 2d at 260. The State's efforts to produce a witness for trial need only be reasonable and honest. *State v. Grier*, 314 N.C. 59, 68, 331 S.E.2d 669, 676 (1985).

In this case, the State offered the testimony of Detective Grubb to show that Brown was unavailable. It would have been better had the State presented at least an affidavit from Brown's doctor to explain her absence. However, the trial court's decision to admit Brown's prior testimony was not prejudicial error.

[3] Defendant next asserts that the State should not have been allowed to question defendant about certain statements he allegedly

made to a former cellmate. Defendant's attorney did not object to these questions until after they were asked and answered. We find no plain error by the trial court.

Because defendant's arguments on this issue implicate the previous opinion by the Supreme Court in this case, we review that opinion now. After defendant's first conviction, our Supreme Court ordered a new trial because the trial court had received in evidence a letter written by defendant's former cellmate James Quick. *State v. Swindler*, 339 N.C. 469, 450 S.E.2d 907 (1992). The letter stated in relevant part:

> On 11/18 of '92, I, James Quick, . . . spoke with inmate Thaddeus Swindler pertaining to a murder he claims to [have] commit[ed] on Oakwood Street, High Point, North Carolina. From my understanding of this murder from Mr. Swindler is that he and some friends had rented some type of housing duplex from Mr. J.D. Moore. However, sometime later, Mr. Moore evicted the tenant; and due to that eviction Mr. Swindler and friends plotted to kill Mr. Moore as revenge. Also, on the night of supposed murder, Mr. Swindler stated to me that he, Swindler, had seen Mr. Moore at this store and followed him home where he fired three shots at Mr. Moore and later fled toward English Road where a police officer stopped him for questioning.

*Id.* at 471, 450 S.E.2d at 909. Quick refused to testify at defendant's first trial and so was not an "available" witness.

The Supreme Court held that Quick's letter was inadmissible hearsay and that its admission violated the Confrontation Clause of the Sixth Amendment. The Court cited *Ohio v. Roberts*, 448 U.S. 56, 65 L. Ed. 2d 597 (1980), for the rule that a hearsay statement made by someone who is not available to testify at trial is inadmissible unless the statement falls within a firmly rooted hearsay exception, or the circumstances under which the statement was made otherwise guarantee its trustworthiness. *Id.* at 472-73, 450 S.E.2d at 910. Quick's letter did not fall within a specific hearsay exception and, the Court held, it lacked the inherent trustworthiness to allow its admission. *Id.* at 475, 450 S.E.2d at 911. Because the admission of the letter violated defendant's rights under the Confrontation Clause, it was presumed to be prejudicial. *See* G.S. § 15A-1443(b) (1988). Because the State could not show that the admission of the letter was harmless beyond a reasonable doubt, a new trial was ordered.

STATE v. SWINDLER

[129 N.C. App. 1 (1998)]

At defendant's second trial, which we now review, James Quick once again refused to testify. This time, however, Quick's letter was not received in evidence. Defendant took the stand and his cross-examination by the Assistant District Attorney included the following exchange:

Q: Isn't it true, Mr. Swindler, that you told a gentleman by the name of James Benny Quick that you and some friends . . . had rented a duplex from Mr. J.D. Moore [the victim], and that he had evicted you from that apartment?

A: That is not true. The D.A. told him [Quick] that. We had the same attorney. He happened to be chain cuffed right beside me when I went for a bond motion.

Q: Who's that?

A: Mr. James Benny Quick. We had the same attorney. We went for a bond motion. He was in court with me. The District Attorney said that as a means to stop me from getting a bond, and James Benny Quick went back to the jail and took the statement he got from the District Attorney Howard Cole . . . .

. . . .

Q: . . . Were you and Mr. Quick incarcerated together at the same time? Y'all were in jail at some time together, at the same time?

A: That's what I'm saying; yeah.

Q: And isn't it true that you told Mr. Quick that you and some friends plotted to kill Mr. Moore as revenge for having you evicted?

A: No, it is not true. If I told Mr. Quick something, I have not rented anything from Mr. Moore, so why would I tell him that I've rented from Mr. Moore and he evicted me, and I've never even stayed in their boarding house. They have never even— I've never even been to their house, never walked to their house, never ate at their house or anything . . . .

. . . .

Q: Okay. Let me ask you whether or not you said to Mr. Quick, while you were incarcerated with him, if on the night of the murder, that you had seen Mr. Moore [the victim] at the store,

and followed him when you fired three shots at him? Did you tell him that?

A: I did not tell Mr. Quick that, and that right there was in the newspaper. You can get the newspaper and read it, the same statement—same statement that the District Attorney made openly in court to deny me a bond. That's the same statement that they had in the newspaper, and that's the same statement that Mr. Quick wrote down on a piece of paper and gave—

MR. LIVELY [counsel for defendant]: Your Honor, at this point I'm going to object to this line of questioning, I believe.

THE COURT: Overruled.

Q: So your testimony basically is that you said none of these things to Mr. Quick?

A: I said none of those things to Mr. Quick.

Defendant argues that it was plain error to allow the State to ask him about "matters the North Carolina Supreme Court had ruled inadmissible."

It is for the trial court to determine the proper scope of cross examination. *State v. Williams*, 279 N.C. 663, 675, 185 S.E.2d 174, 181 (1971). The court's discretion is limited by the requirement that the State ask its questions in good faith. *Id.*

Abuse of discretion is generally found when a prosecutor affirmatively places before the jury an incompetent and prejudicial matter by injecting his own knowledge, beliefs, or personal opinions or facts which are either not in evidence or not admissible.

*State v. Bronson*, 333 N.C. 67, 79; 423 S.E.2d 772, 779 (1992). However, "the questions of the prosecutor will be considered proper unless the record shows that the questions were asked in bad faith." *State v. Dawson*, 302 N.C. 581, 586, 276 S.E.2d 348, 352 (1981).

In this case, there is no evidence that the trial court abused its discretion in allowing the prosecutor to ask the questions challenged by defendant. Contrary to defendant's assertion, the State did not ask him about anything that was inadmissible.

After defendant's first trial, our Supreme Court held that defendant's Confrontation Clause rights were violated because an incriminating letter written by an unavailable witness (Quick) was admitted

into evidence. This letter was a statement by Quick, and the fatal error was admitting the letter when the person who wrote it (Quick) could not be cross-examined by defendant. Our Supreme Court held that the *statement* contained in the letter was inadmissible hearsay, and no more.

In the second trial, Quick's letter was never offered or received in evidence. Defendant was never asked about the contents of Quick's letter or about anything that Quick may have said. Instead, the prosecutor asked if *defendant* had made certain incriminating statements to Quick. The prosecutor never asked about anything that was inadmissible. Nor is there any affirmative showing by this record that the questions were asked in bad faith. We find no plain error in the State's cross-examination of defendant.

[4] Defendant next argues that the trial court erred in denying his request for a specific jury instruction on witness identification. We disagree.

The trial court used the pattern jury instruction on witness identification. This instruction was substantially the instruction requested by defendant, except that it did not specifically mention the lighting conditions on the night in question. Defendant has not shown that the jury was misinformed by the instruction or that there is a reasonable probability a different result would have been reached had the requested instruction been given. N.C. Gen. Stat. § 15A-1443(a) (1997); *State v. Sledge*, 297 N.C. 227, 235, 254 S.E.2d 579, 585 (1979). The instruction given was a correct statement of law and embodied the substance of defendant's request, and we find no abuse of discretion by the trial court.

[5] Defendant next argues that the evidence was insufficient to prove that defendant was guilty of first-degree murder. We disagree.

To withstand a motion to dismiss for insufficiency of the evidence, the State must present substantial evidence of each of the essential elements of the crime charged. *State v. Workman*, 309 N.C. 594, 598, 308 S.E.2d 264, 267 (1983). Substantial evidence means more than a scintilla. *State v. Thomas*, 65 N.C. App. 539, 541, 309 S.E.2d 564, 566 (1983). The evidence is to be viewed in the light most favorable to the State, allowing the State every reasonable inference. *Id.*

First degree murder is "willful, deliberate, and premeditated killing." N.C. Gen. Stat. § 14-17 (Cum. Supp. 1997). In this case, a witness saw defendant with a gun just before the murder and heard him

say that he was angry at an old man. Another witness saw him following the victim just before the killing. Defendant was positively identified as running from the crime scene and other witnesses confirmed that defendant resembled a man who was running from the crime scene. Finally, there was evidence that while defendant was in jail, he said that he killed someone and had gotten rid of the gun and his clothing. On the evidence presented, the jury could reasonably have concluded that defendant killed Moore.

[6] Finally, defendant assigns error to the trial court's denial of his motion for a mistrial. At the close of defendant's evidence, defendant requested a mistrial based on what he claimed was ineffective assistance of counsel. Defendant argues that his counsel should have cross-examined several witnesses about matters which, defendant claims, would have exposed inconsistencies in the State's case.

We have examined the record and hold that defendant has made no showing whatever that his counsel's performance was objectively unreasonable. *See Strickland v. Washington*, 466 U.S. 668, 687-88, 80 L. Ed. 2d 674, 693 (1984). We find no error in the trial court's denial of his motion for mistrial.

No error.

Judge MARTIN, John C. concurs.

Judge McGEE dissents.

Judge McGEE dissenting.

I respectfully dissent to the part of the majority opinion which finds that the trial court did not err in allowing the State to question defendant concerning matters our Supreme Court has ruled inadmissible.

During defendant's first trial, the State submitted a letter into evidence written by James Quick, an inmate in jail with defendant. Quick's letter included defendant's motive for killing Moore, as allegedly told to Quick by defendant. Despite Quick's refusal to testify at the first trial, the letter was admitted into evidence. On appeal, however, our Supreme Court found that the letter should not have been admitted, noting that it lacked the "inherent trustworthiness" required for admission of a hearsay statement:

Quick had no personal knowledge of the events to which he referred in the letter. . . . Quick was not motivated to speak the truth, but rather was motivated to say what the police wanted to hear. Quick had many past convictions and was in jail on pending charges at the time of defendant's trial.

*State v. Swindler*, 339 N.C. 469, 474-75, 450 S.E.2d 907, 911 (1994).

The Court held the letter was inadmissible hearsay in violation of the U. S. Constitution's Confrontation Clause:

The declarant of the letter not having been subject to full and effective cross-examination by defendant, defendant's rights under the Confrontation Clause were violated. Thus, the State must show that any error was harmless beyond a reasonable doubt, a burden which the State, in our view, cannot carry in the present case. The letter contained the only evidence of defendant's motive to kill the victim. The letter also provided the greatest evidence that the murder was committed after premeditation and deliberation. In addition, the letter contained the most specific admission of defendant's guilt in the murder.

*Id.* at 476, 450 S.E.2d at 912 (citation omitted). Defendant's motive for the shooting, as alleged in the letter, was that the victim had evicted defendant from his rented housing. The Supreme Court noted, however, that "no evidence had developed to support this fact. [In fact], Detective Grubb indicated that this portion of the letter was 'totally without basis.' " *Id.* at 475, 450 S.E.2d at 911. These findings resulted in the Court ordering a new trial.

The information in the letter was important to the State in that it contained a possible motive of defendant, in addition to an admission of guilt by defendant. Thus, in defendant's second trial, the State again attempted to get Quick's alleged statements into evidence but did so by questioning defendant about statements he allegedly made to Quick. Quick again refused to testify and was therefore not available for cross-examination.

The majority holds that there is no showing in the record that the questions were asked in bad faith. However, the State had not been able to corroborate Quick's allegations but continued with the line of questioning anyway. In *State v. Bronson*, our Supreme Court defined what constitutes permissible cross-examination:

The bounds of cross-examination are limited by two general principles: 1) the scope of the cross-examination rests within the sound discretion of the trial judge; and 2) the questions must be asked in good faith. A prosecutor's questions are presumed to be proper unless the record shows that they were asked in bad faith. Abuse of discretion is generally found when a prosecutor affirmatively places before the jury an incompetent and prejudicial matter by injecting his own knowledge, beliefs, or personal opinions or facts which are either not in evidence or not admissible.

333 N.C. 67, 79, 423 S.E.2d 772, 779 (1992) (citations omitted); see State v. McLean, 294 N.C. 623, 633, 242 S.E.2d 814, 820-21 (1978) (impeachment of witness as to prior specific criminal acts or specified reprehensible conduct proper only if questions based on information and asked in good faith).

The prosecutor in this case violated the good faith standard by attempting to present to the jury information that was inadmissible. The State could not offer into evidence the letter containing the alleged confession and motive because of our Supreme Court's prior decision and because, once again, Quick repeatedly refused to testify. Thus, the State asked questions about which it had no evidence or proof to support.

We note that the State used this evidence not for impeachment purposes, but as substantive evidence of defendant's motive and admission of guilt. "[T]he prior inconsistent statement of a witness . . . is not admissible as substantive evidence unless it properly falls within an exception to the hearsay rule or except as provided by statute." State v. Minter, 111 N.C. App. 40, 53, 432 S.E.2d 146, 153, cert. denied, 335 N.C. 241, 439 S.E.2d 158 (1993). Even if the State pursued the line of questioning for impeachment purposes, the evidence would arguably still be inadmissible. "Inconsistent statements are admissible simply for the consideration of the jury in determining the witness's credibility. Hence they are not ordinarily admissible until the witness has testified to something with which they are inconsistent." State v. Ward, 338 N.C. 64, 97-98, 449 S.E.2d 709, 727 (1994), cert. denied, 514 U.S. 1134, 131 L. Ed. 2d 1013 (1995). Defendant had not testified about the contents of the letter and therefore should not have been questioned about it even to show inconsistencies.

Because he failed to object until after several questions about this issue had been asked and answered, defendant submits this error

under the "plain error" rule. The plain error rule has been defined by our Supreme Court as follows:

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial' " or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings[.]"

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). Considering that the line of questioning was being used for substantive purposes, that Quick's statements were inherently untrustworthy, and that defendant had no opportunity to cross-examine Quick, the level of prejudice to defendant rises to that of plain error. This cross-examination of defendant was grossly unfair and prejudicial to defendant. Defendant was denied due process of law and should therefore be awarded a new trial.