STATE OF NORTH CAROLINA v. HAROLD RAY HARRIS

No. COA07-383

(Filed 4 March 2008)

**1. Constitutional Law— right of confrontation—victim's statements—victim subject to cross-examination**

There was no error in the admission of testimony from police officers about statements made by a sexual offense and assault victim where defendant argued a violation of the Confrontation Clause, but had objected at trial only on evidentiary grounds and did not request plain error review at trial. Even so, the victim was subject to cross-examination at trial, and defendant cited no evidence that defense counsel ever attempted to recall the victim to cross-examine her further, or that she would have been unavailable.

## 2. Evidence— victim's out-of-court statements—corroborative—slight variances with trial testimony

A sexual offense and assault victim's out-of-court statements to officers were admissible even though defendant contended that the statements went beyond corroboration of trial testimony. Slight variances do not render the testimony inadmissible; moreover, there was a limiting instruction and the result would not have been different without this evidence.

## 3. Criminal Law— identify of attacker—evidence sufficient

The trial court did not err by denying defendant's motion to dismiss a charge of assault with a deadly weapon inflicting serious injury where defendant argued that there was insufficient evidence that he had assaulted the victim. Although the victim testified that she did not see her attacker, the evidence in the light most favorable to the State gives rise to a reasonable inference that defendant was the assailant.

## 4. Assault— deadly weapon—hands and feet

The trial court did not err by denying defendant's motion to dismiss the charge of assault with a deadly weapon inflicting serious injury where defendant argued that there was insufficient evidence that the victim had been assaulted with a deadly weapon. *State v. Hinton*, 361 N.C. 207, does not control this case: the jury was properly allowed to determine whether defendant's hands and feet constituted deadly weapons given the evidence of the disparity in size between defendant and the victim, the marks on her body, and her injuries.

## 5. Sexual Offenses— first-degree—sufficiency of evidence— sexual act

There was sufficient evidence of a first-degree sexual offense where defendant contended that there was not sufficient evidence of a sexual act, but a doctor testified that the hole in the victim's colon could have come from disease, of which there was no evidence, or the insertion of a foreign body, and there was evidence of extensive damage to the victim's outer genital and rectal areas.

## 6. Appeal and Error— preservation of issues—failure to provide argument or authority

Defendant abandoned his argument concerning the admissibility of an assault victim's failure to pay child support by not providing a reason, argument, or authority to support his claim.

**7. Evidence— prior conduct by victim—rape shield exceptions inapplicable**

The trial court did not err by excluding evidence of the victim's prior sexual history and motel stays by defendant and the victim of a sexual offense and assault. Although defendant contended that the evidence implied a prior course of sexual behavior between the two, these exceptions to the rape shield statute were not applicable.

**8. Evidence— victim's prior drug rehabilitation—not admissible**

The trial court did not err by excluding defendant's testimony regarding a sexual offense and assault victim's prior experience in a drug rehabilitation program. While the victim's drug use on the evening of the assault may have been relevant in assessing her credibility, evidence of prior rehabilitation had no bearing on the issue. Furthermore, there was no prejudice because the victim herself had admitted her prior drug use and addiction on cross-examination.

Appeal by Defendant from judgments entered 3 November 2006 by Judge B. Craig Ellis in Superior Court, Columbus County. Heard in the Court of Appeals 17 October 2007.

*Attorney General Roy Cooper, by Assistant Attorney General Kevin Anderson, for the State.*

*Irving Joyner for Defendant-Appellant.*

McGEE, Judge.

A jury found Harold Ray Harris (Defendant) guilty of one count of first-degree sexual offense and one count of assault with a deadly weapon inflicting serious injuries on 3 November 2006. The trial court sentenced Defendant to a term of 240 months to 297 months in prison on the first-degree sexual offense charge, and to a consecutive term of twenty-five months to thirty months in prison on the assault charge. Defendant appeals.

The evidence presented at trial tended to show the following: Defendant and K.L. went to a motel together on the evening of 6 November 2005. According to K.L., Defendant had told K.L. that they were going to the motel to attend a birthday party for one of Defendant's coworkers. K.L. testified that when she walked into the motel room, she picked up a remote control to turn on the television

and felt a blow to the back of her head. K.L. was thrown onto the tile bathroom floor, and she remembered "fists coming at me at my face." The next thing K.L. remembered was sitting in a restaurant with Defendant the following day. K.L. also remembered speaking with a police officer a short time later and telling the officer the name "Harold."

Jamesie Gentry (Ms. Gentry) was the owner of the restaurant where K.L. and Defendant ate on 7 November 2005. Ms. Gentry testified that Defendant and K.L. came into her restaurant around 11:00 a.m., and K.L. was having difficulty walking. K.L.'s hair was matted, her shirt was dirty and bloody, and her face was badly swollen. Ms. Gentry also observed a shoe print on K.L.'s back. Ms. Gentry called police and told them that K.L. needed immediate assistance.

Officer Franklin Blake Potter (Officer Potter) with the Chadbourn Police Department testified that on the morning of 7 November 2005, he responded to a call at a restaurant near the police department. When Officer Potter entered the restaurant, he immediately noticed K.L. sitting with Defendant. According to Officer Potter, K.L. "had very swollen lips. Her eyes were swollen shut. She was bent over, holding her abdominal area, taking slow, faint breaths, and unable to move." Defendant informed Officer Potter that K.L. had recently had tooth surgery and could not talk, and Defendant would answer any questions Officer Potter had. Officer Potter took K.L. outside the restaurant to speak with her privately, and Defendant instructed K.L., "[d]on't tell him anything." Once outside, Officer Potter asked K.L. who had hurt her. K.L. responded, "Harold," and identified "Harold" as Defendant. Officer Potter called an ambulance for K.L. and took Defendant into custody.

Dr. Andrew John Hutchinson (Dr. Hutchinson) treated K.L. when she arrived at the emergency room on 7 November 2005. Dr. Hutchinson testified that K.L. had handprints on her arms, thighs, buttocks, and neck. K.L.'s face was scratched, bruised, and swollen. Dr. Hutchinson ordered a CAT scan of K.L.'s head, which revealed massive soft tissue swelling of K.L.'s head, face, and neck. Dr. Hutchinson testified that K.L.'s injuries could have been caused by blunt trauma to her head and face, such as being hit with fists. Dr. Hutchinson also ordered a CAT scan of K.L.'s abdomen, which revealed that K.L. had air in her abdomen caused by a hole in one of her organs. Doctors immediately prepared K.L. for surgery. Once in the operating room, Dr. Hutchinson noticed that K.L. had sustained bruises and cuts to her genital area, and was bleeding from her rec-

tum. Dr. Hutchinson also saw more bruising and handprints on the backs of K.L.'s thighs and buttocks. During surgery, doctors found a large hole in K.L.'s colon and repaired the damage. Dr. Hutchinson testified that K.L.'s colon injury was consistent with a foreign body being inserted into K.L.'s rectum.

Floyd Ray Watts (Mr. Watts) had been acquainted with Defendant for a number of years. Mr. Watts testified at trial that Defendant visited him at his house around 7:00 a.m. or 8:00 a.m. on 7 November 2005. According to Mr. Watts, Defendant stated that "he had blackened [K.L.]'s eye and busted her lip" because K.L. "had been sleeping with a Black man." Defendant then left Mr. Watts' house.

Defendant also testified at trial. According to Defendant, K.L. had been taking Xanax, Valium, and Soma pills the night of the assault. Defendant testified that he and K.L. arrived at the motel around 8:00 p.m. Two hours later, K.L. asked Defendant to go purchase some cigarettes. Defendant left the motel, bought cigarettes, went to see a friend, and returned to the motel shortly after midnight. When Defendant entered the motel room, he saw K.L. lying on the bed. Her underwear was next to her on the bed and was stained with blood. Defendant asked K.L. what had happened, and K.L. responded, "I left some people in the room. It's my body, I'll do what I want to with it." Defendant claimed that he attempted to call paramedics for K.L., but K.L. refused assistance. Defendant did not notice that K.L.'s face was bruised and swollen until the following morning. That morning, K.L. dressed herself and insisted that Defendant take her to eat at a restaurant. Defendant and K.L. left the motel around 11:00 a.m. and went to a diner, where they were approached by police. Defendant denied having visited Mr. Watts early that morning before leaving the motel with K.L.

A jury convicted Defendant of one count of first degree sexual offense and one count of assault with a deadly weapon inflicting serious injuries. Defendant appeals and argues that the trial court erred by: allowing witnesses to testify as to K.L.'s out-of-court statements; refusing to dismiss the charges against Defendant due to insufficiency of the evidence; and refusing to allow Defendant to question K.L. regarding certain topics on cross-examination.

I.

Defendant first argues that the trial court erred by allowing police officers to testify at trial to allegedly inadmissible out-of-court statements K.L. made to police following her assault and surgery.

Defendant argues that this evidence was inadmissible under both federal and state law.

A.

[1] Officer Potter testified at Defendant's trial regarding the conversation he had with K.L. after he first saw her at the restaurant on 7 November 2005. In addition, Lieutenant Harold Dion Hayes (Lieutenant Hayes) of the Chadbourn Police Department testified about K.L.'s responses to both written and oral questions he asked of K.L. while K.L. was hospitalized. Defendant contends that the trial court should have excluded the officers' testimony pursuant to *Crawford v. Washington*, 541 U.S. 36, 158 L. Ed. 2d 177 (2004). In *Crawford*, the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment bars the admission of an out-of-court testimonial statement made by an unavailable declarant who did not testify at trial and who was not previously available for cross-examination by the defendant. According to Defendant, K.L.'s out-of-court statements were inadmissible because (a) her statements were testimonial, and (b) although K.L. testified at trial, there was no indication that she was available for the remainder of the trial to be examined again by defense counsel.

We find that Defendant has not preserved this argument for appellate review. Defendant objected to the officers' testimony at trial on state evidentiary grounds alone and did not raise a federal constitutional objection. Our Courts have consistently held that constitutional issues not raised and passed upon at trial will not be considered for the first time on appeal. *See, e.g., State v. Grooms*, 353 N.C. 50, 61, 540 S.E.2d 713, 721 (2000), *cert. denied*, 534 U.S. 838, 151 L. Ed. 2d 54 (2001). Further, Defendant is not entitled to plain error review because he has not asked this Court to review the admission of K.L.'s out-of-court statements for plain error. *See, e.g., State v. Frye*, 341 N.C. 470, 496, 461 S.E.2d 664, 677 (1995), *cert. denied*, 517 U.S. 1123, 134 L. Ed. 2d 526 (1996); N.C.R. App. P. 10(c)(4).

Even were this Court to review Defendant's constitutional challenge, Defendant's *Crawford* argument is without merit. The Supreme Court in *Crawford* clearly stated that "when the declarant appears for cross-examination at trial, the Confrontation Clause places *no constraints* at all on the use of [the declarant's] prior testimonial statements." *Crawford*, 541 U.S. at 59, 158 L. Ed. 2d at 197-98 n.9 (emphasis added). The rule in *Crawford* therefore does not apply when the declarant is subject to cross-examination at trial. *See State v.*

*Burgess,* 181 N.C. App. 27, 34, 639 S.E.2d 68, 74 (2007) (holding that admission of the declarants' prior out-of-court statements did not violate *Crawford* because the declarants testified at trial and were available for cross-examination). K.L. was subject to cross-examination at trial, and therefore *Crawford* is inapplicable here. In addition, Defendant's argument that K.L. was unavailable to be recalled for further examination by defense counsel is likewise without merit. Defendant cites no evidence in the record that defense counsel ever attempted to recall K.L. and cross-examine her further regarding her out-of-court statements, or that K.L. would have been unavailable for further cross-examination.

B.

**[2]** Defendant also argues that K.L.'s out-of-court statements were inadmissible because they went beyond mere corroboration of K.L.'s own trial testimony. In *State v. Swindler,* 129 N.C. App. 1, 497 S.E.2d 318, *disc. review denied,* 348 N.C. 508, 510 S.E.2d 670, *aff'd per curiam,* 349 N.C. 347, 507 S.E.2d 284 (1998), our Court held that "[p]rior consistent statements of a witness are admissible for purposes of corroboration," and "[w]hen so offered, evidence of a prior consistent statement must in fact corroborate a witness's later testimony." *Id.* at 4-5, 497 S.E.2d at 320. Defendant argues that K.L.'s out-of-court statements introduced by Officer Potter and Lieutenant Hayes included new and different hearsay testimony that went beyond merely corroborating K.L.'s trial testimony. We disagree.

As noted above, K.L. testified at trial that she and Defendant were alone in a motel room when she was assaulted. K.L. also remembered being at a restaurant with Defendant the following day and giving Defendant's name to a police officer. Officer Potter testified that once outside the restaurant, he asked K.L. who had assaulted her, and K.L. responded, "Harold." K.L. then identified Defendant as "Harold," and told police that she had been assaulted the previous night at a motel. We find nothing in Officer Potter's testimony regarding K.L.'s out-of-court statement that does not corroborate K.L.'s trial testimony or that introduces new hearsay on a different subject. While K.L.'s testimony and out-of-court statements are not completely identical, our Courts have held that " '[s]light variances in the corroborative testimony do not render it inadmissible.' " *Id.* at 5, 497 S.E.2d at 321 (quoting *State v. Covington,* 290 N.C. 313, 337, 226 S.E.2d 629, 646 (1976)).

Lieutenant Hayes testified that he gave K.L. a series of written questions while K.L. was in the hospital on 10 November 2005.

According to Lieutenant Hayes, K.L. wrote that her name was "[K.N.]," that her birth date was "3/6/74," and that the day of the week was "Thursday." K.L. also wrote that "Harold Harris" had assaulted her. Defendant argues that these statements differed significantly from K.L.'s trial testimony and were not corroborative. We disagree. K.L. testified at trial that her maiden name was "[K.F.N.]" and that she was thirty-two years old. These slight variances in K.L.'s in-court and out-of-court statements do not render her out-of-court statements inadmissible. Further, K.L.'s statement that Defendant had assaulted her was generally corroborative of her in-court testimony that she was assaulted while alone in the motel room with Defendant. *See State v. Love*, 152 N.C. App. 608, 616, 568 S.E.2d 320, 325-26 (2002), *disc. review denied*, 357 N.C. 168, 581 S.E.2d 66 (2003) (stating that "[c]orroborative testimony may contain additional information when it strengthens or adds credibility to the testimony in which it corroborates but it may not contradict trial testimony"). Even if K.L.'s out-of-court statement identifying Defendant as her attacker went beyond merely corroborating her in-court testimony that she was attacked while alone with Defendant, the trial court later explicitly instructed the jury:

> Ladies and gentlemen, the testimony of [Lieutenant Hayes] about what [K.L.] wrote down on the piece of paper when he asked her questions was received for the purpose of corroborating [K.L.]'s testimony. Whether or not it does, again, is for you, the jury, to determine. We will receive it for that purpose only.

Because the trial court's instruction ensured that the jury considered K.L.'s out-of-court statement only for its proper corroborative purpose, and not as substantive evidence, there was no error. *See State v. Daniels*, 59 N.C. App. 63, 67, 295 S.E.2d 508, 511 (1982) (holding that where the trial court instructed the jury that a witness's prior consistent statements were to be considered "solely as corroborative evidence, there was no error").

Lieutenant Hayes also testified that he spoke with K.L. in the hospital on 15 November 2005. According to Lieutenant Hayes, K.L. said during that interview that: Defendant had a crush on her; she and Defendant were friends who took drugs together; she and Defendant had not been drinking and did not have sex on 6 November 2005 prior to the assault; she did not remember Defendant giving her any medication; she went to the motel with Defendant of her own free will; Defendant had lied about where they were going that night; she

remembered being hit on the head with something similar to a tire iron, and remembered being thrown on the bathroom floor and being hit in the face; she was attacked and sodomized by Defendant, although she did not remember it; Defendant threatened to harm her if she told anyone what happened; and Defendant helped her to get into a car and into the restaurant. Defendant contends that K.L.'s out-of-court statements to Lieutenant Hayes differed greatly from K.L.'s trial testimony. We disagree. K.L. testified at trial that: she and Defendant were friends, but Defendant wanted to be romantically involved; she had abused prescription drugs in the past; she had agreed to go with Defendant to the motel; Defendant had told her they were going to the motel for a birthday party; and she remembered feeling a blow to the back of her head, being thrown to the bathroom floor, and being punched in the face. Admittedly, portions of K.L.'s out-of-court statements to Lieutenant Hayes contained information that K.L. did not include in her in-court testimony. However, the differences between K.L.'s in-court and out-of-court statements are not contradictory. Rather, K.L.'s trial testimony was simply a less-complete statement of the events than her out-of-court statement to Lieutenant Hayes. *See State v. Ramey*, 318 N.C. 457, 470, 349 S.E.2d 566, 574 (1986) (holding that although "[t]he victim's prior oral and written statements . . . includ[ed] additional facts not referred to in his testimony," the victim's prior statements "tended to strengthen and add credibility to his trial testimony. They were, therefore, admissible as corroborative evidence."). Further, the trial court explicitly instructed the jury to consider K.L.'s out-of-court statements for corroboration purposes only, which ensured that Defendant would not be prejudiced by the variations in K.L.'s statements. *See Daniels*, 59 N.C. App. at 67, 295 S.E.2d at 511.

Finally, we find that even if the trial court erred by admitting certain portions of Officer Potter's and Lieutenant Hayes's testimony, Defendant was not prejudiced by such error. *See State v. Hinnant*, 351 N.C. 277, 291, 523 S.E.2d 663, 672 (2000) (stating that "[t]he erroneous admission of hearsay 'is not always so prejudicial as to require a new trial.' Rather, [the] defendant must show 'a reasonable possibility that, had the error in question not been committed, a different result would have been reached at . . . trial[.]' " (quoting *Ramey*, 318 N.C. at 470, 349 S.E.2d at 574; N.C. Gen. Stat. § 15A-1443(a) (1999)). Defendant does not argue in his brief that the result at trial would have been different if the trial court had not admitted the contested portions of the officers' testimony. Further, as discussed below, we

find that even excluding the contested portions of K.L.'s out-of-court statements, the State introduced sufficient evidence to support a finding of Defendant's guilt on both charges. Therefore, Defendant's assignment of error is overruled.

## II.

Defendant next argues that the trial court erred by denying his motion to dismiss the charges against him due to the insufficiency of the State's evidence. To survive a motion to dismiss based on insufficient evidence, the State must present "substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of [the] defendant's being the perpetrator of such offense." *State v. Powell*, 299 N.C. 95, 98, 261 S.E.2d 114, 117 (1980). Substantial evidence exists if, considered in the light most favorable to the State, the evidence "gives rise to a reasonable inference of guilt." *State v. Jones*, 303 N.C. 500, 504, 279 S.E.2d 835, 838 (1981). However, a defendant's motion to dismiss must be granted "[i]f the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it[.]" *Powell*, 299 N.C. at 98, 261 S.E.2d at 117.

## A.

**[3]** Defendant first argues that the State failed to introduce sufficient evidence on the charge of assault with a deadly weapon inflicting serious injuries. Defendant contends that the State did not introduce substantial evidence that Defendant was the perpetrator of the crime committed. Defendant claims that the only evidence presented by the State regarding the identity of K.L.'s attacker was K.L.'s testimony that she was struck in the back of the head, but never actually saw her attacker. According to Defendant, this evidence only raises conjecture and speculation regarding Defendant's role in the assault. We disagree with Defendant's characterization of the State's evidence. K.L. testified that she and Defendant went alone to a motel room. She was assaulted immediately after entering the room, and by the following morning, had sustained serious physical injuries. K.L.'s statements to police corroborated her testimony that she had been alone with Defendant when she was assaulted. Defendant testified that he knew K.L. was bleeding and had been injured, but he never sought medical assistance for her. In fact, Defendant attempted to keep Officer Potter from asking K.L. how she had been hurt. Officer Potter testified that Defendant explicitly instructed K.L. not to say anything to police. Further, Mr. Watts testified that Defendant stated that he

had assaulted K.L. Although K.L. testified that she did not see her attacker, and although Defendant denied any involvement in the assault, we find that the evidence, when taken in the light most favorable to the State, gives rise to a reasonable inference that Defendant was K.L.'s assailant.

[4] Defendant also contends that the State did not introduce substantial evidence that he assaulted K.L. with a deadly weapon. We disagree. Our Courts have previously held that under certain conditions, an assailant's hands and feet may be considered "deadly weapons" for the purpose of the crime of assault with a deadly weapon. *See, e.g., State v. Rogers,* 153 N.C. App. 203, 211, 569 S.E.2d 657, 663 (2002), *disc. review denied,* 357 N.C. 168, 581 S.E.2d 442 (2003) (where the defendant was charged with assault with a deadly weapon with intent to kill inflicting serous injury, the Court held that "hands and fists may be considered deadly weapons, given the manner in which they were used and the relative size and condition of the parties involved"); *State v. Jacobs,* 61 N.C. App. 610, 611, 301 S.E.2d 429, 430, *disc. review denied,* 309 N.C. 463, 307 S.E.2d 429 (1983) (holding that where the thirty-nine-year-old, 210-pound male defendant hit the sixty-year-old female victim in her head and stomach with his fists, "[t]he defendant's fists could have been a deadly weapon given the manner in which they were used and the relative size and condition of the parties").[1] Whether an assailant's hands and feet are used as deadly weapons is a question of fact to be determined

---

1. Our Courts have recently held that hands cannot be considered "dangerous weapons" for the purposes of certain other crimes containing a "dangerous weapon" element. In *State v. Hinton,* 361 N.C. 207, 639 S.E.2d 437 (2007), our Supreme Court held that hands are not "dangerous weapons" for the purposes of the crime of robbery with a dangerous weapon. Under N.C. Gen. Stat. § 14-87(a) (2007), "[a]ny person or persons who, having in possession or with the use or threatened use of any firearms or other dangerous weapon, implement or means, whereby the life of a person is endangered or threatened, unlawfully takes or attempts to take personal property from another" is guilty of a class D felony. Our Supreme Court found that "the purpose of N.C.G.S. § 14-87 is to provide for more severe punishment when the robbery is committed with the 'use or threatened use of firearms or other dangerous weapons,'" and concluded that "the General Assembly intended to require the State to prove that a defendant used an external dangerous weapon[.]" *Id.* at 211-12, 639 S.E.2d at 440 (quoting *State v. Jones,* 227 N.C. 402, 405, 42 S.E.2d 465, 467 (1947)). In addition, our own Court has relied on *Hinton* to reach a similar conclusion regarding the crimes of first-degree rape and first-degree sexual offense, each of which contain the element of "[e]mploy[ing] or display[ing] a dangerous or deadly weapon or an article which the [victim] reasonably believes to be a dangerous or deadly weapon[.]" N.C. Gen. Stat. § 14-27.2(a)(2) (2007) (defining the crime of first-degree rape); N.C. Gen. Stat. § 14-27.4(a)(2) (2007) (defining the crime of first-degree sexual offense). *See State v. Adams,* 187 N.C. App. ——, 654 S.E.2d 711 (2007).

STATE v. HARRIS

[189 N.C. App. 49 (2008)]

by the jury. *State v. Hunt*, 153 N.C. App. 316, 318-19, 569 S.E.2d 709, 710-11 (2002).

In the current case, the evidence tended to show that Defendant weighed 175 pounds and K.L. weighed 110 pounds. Ms. Gentry testified that when Defendant and K.L. came into her restaurant, K.L. had a shoe print on her back. Dr. Hutchinson testified that K.L. had handprint bruises on her arms, thighs, and buttocks. In addition, K.L. had handprints on her neck, which Dr. Hutchinson noted were consistent with a choke hold. Dr. Hutchinson also testified that the handprints on K.L.'s neck could have been responsible for swelling in K.L.'s mouth, tongue, and throat. Under these circumstances, the jury was properly allowed to determine whether Defendant's hands and feet constituted deadly weapons. *Compare State v. Grumbles*, 104 N.C. App. 766, 411 S.E.2d 407 (1991) (where the evidence showed that the 175-pound male defendant hit and choked the 107-pound female victim, leaving marks on her neck and causing her facial swelling and a broken jaw, the Court held that the trial court properly submitted to the jury the issue of whether the defendant's hands were deadly weapons, given the size and strength disparity between the defendant and the victim, as well as the "devastating physical effect" of the assault).

We find that the State introduced substantial evidence that Defendant assaulted K.L., and that Defendant assaulted K.L. using a deadly weapon. Any weakness in the State's evidence or discrepancy between the State's evidence and Defendant's testimony was for the jury to consider. The trial court did not err in denying Defendant's motion to dismiss the charge of assault with a deadly weapon inflicting serious injuries.

---

Our Supreme Court in *Hinton*, however, expressly declined to read N.C.G.S. § 14-87 *in pari materia* with N.C. Gen. Stat. § 14-33(c)(1), which criminalizes misdemeanor assault with a deadly weapon. *Hinton*, 361 N.C. at 211, 639 S.E.2d at 440. The Court distinguished N.C.G.S. § 14-87, in part, because unlike the assault statute, it referred specifically to "firearm[s]" or other "implement[s]" in describing the "types of weapons that suffice under the statute to increase a defendant's sentence[.]" *Id.* at 212, 639 S.E.2d at 440. According to the Court, this language "indicates that a defendant must use an external weapon to be convicted under N.C.G.S. § 14-87." *Id.* The Court did not address or distinguish the felony assault with a deadly weapon statute under which Defendant here was convicted. *See* N.C. Gen. Stat. § 14-32(b) (2007) (punishing as a felon "[a]ny person who assaults another person with a deadly weapon and inflicts serious injury"). However, given that the Court did not apply its new rule to the misdemeanor assault statute, and likewise did not overrule cases such as *Rogers* or *Jacobs* that allowed the hands-as-deadly-weapons question to go to the jury in felony assault cases, we find that *Hinton* does not control our decision in the current case.

B.

**[5]** Defendant next argues that the State failed to introduce suffi-cient evidence on the charge of first-degree sexual offense. Defendant contends that the State did not introduce substantial evi-dence that Defendant was the perpetrator of the crime committed. We disagree. As noted above, we have found that the State introduced substantial evidence identifying Defendant as the person responsible for K.L.'s injuries.

Defendant also contends that the State did not introduce sub-stantial evidence that Defendant committed a "sexual act" on K.L. *See* N.C.G.S. § 14-27.4(a)(2) (defining first-degree sexual offense as "engag[ing] in a sexual act . . . [w]ith another person by force and against the will of the other person, and . . . [i]nflict[ing] serious per-sonal injury upon the victim"). "The term 'sexual act' as used in this statute means cunnilingus, fellatio, analingus, or anal intercourse. It also means the penetration, however slight, by any object into the genital or anal opening of another person's body." *State v. DeLeonardo*, 315 N.C. 762, 764, 340 S.E.2d 350, 353 (1986).

Defendant notes that rape kits prepared while K.L. was at the hospital showed no evidence of Defendant's pubic hair, semen, saliva, or other bodily fluids. Defendant argues that the State's only evidence of a sexual act was Dr. Hutchinson's speculation that the intrusion of an object into K.L.'s rectum could have resulted in the injury to her colon. Defendant contends that this does not amount to substantial evidence that Defendant committed a sexual act on K.L. We disagree. Dr. Hutchinson testified that a hole in a person's colon could be caused in two different ways. First, a hole could be caused by a cer-tain type of disease, and Dr. Hutchinson found no evidence that K.L. was suffering from that disease. Second, the hole could have been caused by the insertion of a body part or other foreign object into K.L.'s rectum. When considered with the evidence that K.L. also suf-fered extensive damage to her outer genital and rectal areas, the State's evidence gives rise to a reasonable inference that K.L.'s colon injury was the result of the penetration of an object into her rectum. We find that the State introduced substantial evidence on the charge of first-degree sexual offense, and therefore hold that the trial court did not err in denying Defendant's motion to dismiss.

III.

Defendant next argues that the trial court erred by excluding cer-tain evidence related to K.L.'s delinquent child support payments,

prior drug abuse, and prior sexual activity with Defendant and with other people. "A trial court's rulings on relevancy . . . are given great deference on appeal." *State v. Wallace*, 104 N.C. App. 498, 502, 410 S.E.2d 226, 228 (1991), *disc. review denied*, 331 N.C. 290, 416 S.E.2d 398, *cert. denied*, 506 U.S. 915, 121 L. Ed. 2d 241 (1992). Further, the decision whether to exclude relevant evidence as unfairly prejudicial under N.C. Gen. Stat. § 8C-1, Rule 403 "is a matter left to the sound discretion of the trial court and will only be reversed upon a showing that the trial court's ruling was manifestly unsupported by reason or was so arbitrary that it could not have been the result of a reasoned decision." *State v. Womble*, 343 N.C. 667, 690, 473 S.E.2d 291, 304 (1996), *cert. denied*, 519 U.S. 1095, 136 L. Ed. 2d 719, *reh'g denied*, 520 U.S. 1111, 137 L. Ed. 2d 322 (1997).

[6] Defendant first asserts that the trial court erred by excluding evidence of K.L.'s allegedly delinquent child support payments. However, Defendant only references this argument in the heading for section III of his brief. Defendant never provides a reason, argument, or authority to support his claim. Defendant has therefore abandoned his argument under N.C.R. App. P. 28(b)(6).

[7] Defendant next argues that the trial court erred by excluding certain evidence regarding K.L.'s prior sexual history. Defendant testified on *voir dire* that on multiple occasions, he had seen K.L. offer to have sex with other people in exchange for drugs. The State objected to Defendant's testimony, and the trial court sustained the State's objection. The trial court did not state the basis of its decision, but it appears that the trial court believed the evidence was irrelevant and therefore inadmissible under our rape shield statute. Defendant contends that this evidence was admissible under an exception to the rape shield:

> [T]he sexual behavior of the complainant is irrelevant to any issue in the prosecution unless such behavior . . . [i]s evidence of a pattern of sexual behavior so distinctive and so closely resembling the defendant's version of the alleged encounter with the complainant as to tend to prove that such complainant consented to the act or acts charged or behaved in such a manner as to lead the defendant reasonably to believe that the complainant consented[.]

N.C. Gen. Stat. § 8C-1, Rule 412(b)(3) (2007). Defendant contends that the contested evidence demonstrated a distinctive pattern in K.L.'s behavior that resembles Defendant's version of the assault: that

K.L. was assaulted when she attempted to trade sex for drugs with another person while Defendant was absent from the motel room. We disagree with Defendant's contention. Rule 412(b)(3) provides that such evidence is only relevant on the issue of consent between a complainant and a defendant. Defendant has never argued that he had a consensual sexual encounter with K.L. on 6 November 2005; to the contrary, he has repeatedly denied having such an encounter, consensual or otherwise. Thus, this exception to the rape shield does not apply, rendering the contested evidence irrelevant under Rule 412(b). The trial court therefore did not err in excluding evidence of K.L.'s prior sexual behavior with persons other than Defendant.

Defendant next argues that the trial court erred by excluding certain evidence regarding his own sexual history with K.L. Defendant testified on *voir dire* that K.L. had offered to have sex with him on "a couple of hundred" occasions in exchange for drugs. The State objected to Defendant's testimony, and the trial court sustained the State's objection. Again, the basis of the trial court's ruling was not entirely clear, but it appears that the trial court believed the testimony was irrelevant. Defendant contends that this evidence was admissible under another exception to the rape shield: "[T]he sexual behavior of the complainant is irrelevant to any issue in the prosecution unless such behavior . . . [w]as between the complainant and the defendant[.]" N.C.G.S. § 8C-1, Rule 412(b)(1). We disagree with Defendant's contention. Rule 412(b)(1) does not exclude evidence of prior sexual behavior between a complainant and a defendant because "prior consent from a complainant to the defendant on trial is relevant to the complainant's subsequent consent to that defendant[.]" *State v. Ginyard*, 122 N.C. App. 25, 31-32, 468 S.E.2d 525, 530 (1996). As noted above, Defendant denied having a sexual encounter with K.L. on 6 November 2005, and has not raised K.L.'s consent as a defense. Thus, this exception to the rape shield does not apply, rendering Defendant's testimony irrelevant under Rule 412(b) and therefore inadmissible. The trial court did not err in excluding evidence of K.L.'s prior sexual behavior with Defendant.

Defendant next argues that the trial court erred by excluding certain evidence regarding K.L. and Defendant's prior motel stays. During Defendant's cross-examination of K.L., K.L. testified during *voir dire* that she and Defendant had rented motel rooms together on a number of previous occasions. The State objected to this testimony, and the trial court sustained the State's objection under N.C. Gen. Stat. § 8C-1, Rule 403, on the basis that the prejudicial effect of the

testimony outweighed its probative benefit. Defendant contends that this evidence was relevant and admissible under Rule 412(b)(1) because it implied a prior course of sexual behavior between Defendant and K.L. We disagree. Again, as Defendant has not raised K.L.'s consent as a defense, this exception to the rape shield is inapplicable. Further, the trial court excluded this evidence not because it was inadmissible under the rape shield, but rather because it was unfairly prejudicial. Given the questionable relevance of this evidence and its likely prejudicial effect on the remainder of K.L.'s testimony, we cannot say that the trial court's Rule 403 ruling "was manifestly unsupported by reason or was so arbitrary that it could not have been the result of a reasoned decision." *Womble*, 343 N.C. at 690, 473 S.E.2d at 304. Therefore, the trial court did not err by excluding evidence of K.L. and Defendant's prior motel stays.

[8] Finally, Defendant argues that the trial court erred by excluding certain evidence regarding K.L.'s prior drug use. Early in the trial, the trial court ruled that Defendant could question K.L. regarding her drug use on the day of the assault, as well as her ongoing addiction to prescription drugs. Defendant did in fact elicit testimony from K.L. on these topics, and K.L. admitted that she had drug addiction problems, and could not recall whether she had taken drugs the day of the assault. Later at trial, Defendant testified that when he returned to the motel room to find K.L. injured, K.L. asked Defendant not to call the police because "the first thing they will do whenever they take me to the hospital is take me to Lumberton, because they'll try to dry me out." Defendant then added, "[s]he had been two times before." The State objected to Defendant's last statement. The trial court sustained the State's objection and instructed the jury not to consider Defendant's answer. The State did not offer the grounds for its objection, and the trial court did not state the basis of its ruling.

Defendant argues that the trial court erred by excluding this evidence because K.L.'s drug addiction and possible drug use the night of the assault was relevant to the jury's assessment of K.L.'s credibility. We disagree. "When a general objection is sustained it will generally be upheld if there is any reason to exclude the evidence." *Chapman v. Pollock*, 69 N.C. App. 588, 592, 317 S.E.2d 726, 730 (1984). We find that Defendant's testimony could have been excluded under N.C. Gen. Stat. § 8C-1, Rule 608(b), because the fact of K.L.'s prior placement in a drug rehabilitation program was not probative of her character for truthfulness or untruthfulness. *See, e.g., State v. Rowland*, 89 N.C. App. 372, 382, 366 S.E.2d 550, 555, *disc. review*

*improvidently allowed*, 323 N.C. 619, 374 S.E.2d 116 (1988) (concluding that testimony regarding "[the] defendant's drug addiction was improper under Rule 608(b) because extrinsic evidence of drug addiction, standing alone, is not probative of [a] defendant's character for truthfulness or untruthfulness"). While Defendant is correct that K.L.'s drug use on the evening of 6 November 2005 may have been relevant in assessing the credibility of K.L.'s version of the assault, evidence of K.L.'s prior drug rehabilitation had no bearing on this issue. Further, Defendant could not have been prejudiced by the trial court's exclusion of his testimony, because K.L. had previously admitted her prior drug use and drug addiction problems when cross-examined by Defendant. We find that the trial court did not err by excluding Defendant's testimony regarding K.L.'s prior experience in a drug rehabilitation program.

No error.

Judges HUNTER and BRYANT concur.