IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-791

Filed 6 May 2026

Mecklenburg County, Nos. 21CR224064-590, 21CR224066-590, 21CR224230-590

STATE OF NORTH CAROLINA

v.

WESLEY SMITH

Appeal by defendant from judgments entered 28 October 2024 by Judge Reggie E. McKnight in Mecklenburg County Superior Court. Heard in the Court of Appeals on 26 February 2026.

*Attorney General Jeff Jackson, by Special Deputy Attorney General Daniel K. Covas, for the State.*

*Office of the Public Defender, by Assistant Public Defender Julie Ramseur Lewis, for defendant-appellant.*

WOOD, Judge.

Wesley Smith ("Defendant") appeals from judgments entered following jury verdicts finding him guilty of assault with a deadly weapon inflicting serious injury, assault by strangulation, and assault on a female. On appeal, Defendant contends the trial court erred by: (1) denying Defendant's motion to dismiss all but one of the assaults; (2) entering judgment and sentencing on three assault convictions against statutory mandates; and (3) denying Defendant's motion to dismiss the charge of assault with a deadly weapon. After careful review of the record, we conclude

Defendant received a fair trial free from error.

## I. Factual and Procedural Background

Defendant began dating Joye Lipford ("Joye") in January 2021. Joye worked as a bar manager at The Hideaway in Charlotte, North Carolina. On the evening of 31 July 2021, Joye and her staff decided to take a celebratory shot of alcohol together after having a successful but busy night at the bar. The deejay for the evening took a video of the staff, along with a patron and posted it to social media. Defendant saw the social media post and began texting Joye, accusing her of having sexual relations with the patron shown in the video. Joye denied the accusations.

According to Joye, after closing the bar between two and four o'clock in the morning, she received a ride home from a co-worker because Defendant had previously taken her car for his own use. When Joye arrived home, she put her things on the couch and wanted to get ready for bed. Defendant began calling her names and telling her nobody wanted her, "they just wanted to have their way with [her]." Joye ignored him and asked if he was finished in the bathroom so she could use it.

Joye went into the bathroom, closed the door, and sat on the toilet. Defendant "bust[ed] the door open" and began yelling and screaming and pointing his fingers in her face. Joye told Defendant to leave her alone, she was done with the relationship, and he could go back to the mother of his child with whom he had been previously. Defendant responded by punching her in the face. Joye fell off the toilet and hit her head on the bathtub. Defendant grabbed Joye by the throat and continued hitting

her head against the tub. She briefly lost consciousness. "He then began punching [her] again over and over." Then he stopped, grabbed the shower rod, and pulled it down. He began beating her with the metal shower rod. He also kicked her with his bare feet and strangled her again with both hands around her neck. She started feeling numb and couldn't breathe.

Defendant then dragged Joye from the bathroom into the main room by her hair and left her on the floor, unmoving, while he located a belt from his work pants and his work boots, which he put on. He returned to Joye and began lashing her with the belt and then repeatedly stomped on her left side. He yelled at her saying "if he couldn't have [her], no one would." He used the leather strap of the belt to lash her as well as the buckle to strike her. The buckle pierced her side, drawing blood. At one point he stopped, pushed her face to the side, and took a bite out of her cheek. Once Defendant got tired and moved to the back of the apartment, Joye ran out of the apartment, naked from the bottom down.

Joye was able to reach her landlord's apartment. The landlord let her inside, helped her lie down, and called 911. Officer Michael Bedard ("Officer Bedard") responded to the 911 call. Officer Bedard noted numerous injuries on Joye, including welts and bruises on her body, a swollen face, a sizeable forehead welt, a black eye, and red dotting within her eyes. He took Joye's statement concerning the events of the evening and attempted to access her apartment. However, Joye did not have a key to her residence with her, the door was locked, and no one answered when he

knocked. Officer Bedard left to obtain warrants, and the case was handed off to a domestic violence detective to continue the investigation.

Joye was transported to Presbyterian Medical Center Emergency Department where she was evaluated by physician assistant Jonathan Sherrill ("P.A. Sherrill"). P.A. Sherrill requested CT scans and diagnosed Joye with compression fractures of her thoracic spine at the T3 and T4 vertebrae, as well as a head injury, various bruises, and welts. P.A. Sherrill also requested a sexual assault nurse examiner (SANE) to assess Joye due to the domestic violence and strangulation concerns.

Nurse Julia Harkey ("Nurse Harkey"), a SANE nurse, evaluated Joye. Nurse Harkey noted Joye had bite marks on her cheek and right hand, breaks in her skin, abrasions, redness, bruising, swelling, and pain. Additionally, her eyes were red, bruised, swollen, and displayed subconjunctival hemorrhages, and her ears contained dried blood.

Joye was released from the hospital later the morning of 1 August 2021, after all evaluations were completed.

A warrant for Defendant's arrest was issued on 11 August 2021, and on 23 August 2021, Defendant was indicted for assault on a female, assault by strangulation, and assault with a deadly weapon inflicting serious injury.

Defendant's case came on for trial in Mecklenburg County Superior Court on 22 October through 28 October 2024. The State presented testimony from Joye, Officer Bedard, P.A. Sherrill, and Nurse Harkey. In addition to their testimonies,

police reports, medical reports, and photographs were all entered into evidence. At the close of the State's evidence Defendant made a motion to dismiss for insufficiency of evidence. The trial court denied the motion.

Defendant then presented two witness, Adrianne Dungee Barnett ("Barnett") and Defendant. Barnett, Defendant's aunt, testified that from January to September 2021 Defendant was living with her and stayed every night during that time in her home. Defendant testified that although he had been in a romantic relationship with Joye previously, the relationship ended in December 2020. He testified that in July 2021 he was living with his aunt, not Joye, did not have a key to Joye's residence, and did not have any belongings in Joye's home. He also testified that the last time he saw Joye was on 29 July 2021, to help her move some furniture. He stated he was not at her home on 1 August 2021 and did not assault her. However, on cross examination, the State introduced a recording of a phone call Defendant made from jail during which he discussed bond paperwork with a friend. He provided Joye's address as his own to his friend who was filling out the paperwork. Defendant testified on redirect that he had provided Joye's address because his aunt had requested that he not use her home address for bond paperwork.

At the close of all evidence Defendant made another motion to dismiss for insufficiency of the evidence. Defendant argued the State failed to present sufficient evidence that his hands were a deadly weapon because there were no "devastating physical effects" and there was not a significant "physical disparity" between the

victim and Defendant. After hearing from both sides on the issue of hands as a deadly weapon the trial court denied the motion. The jury returned verdicts of guilty on all three charges. Defendant was sentenced to a 60-day term of imprisonment for assault on a female and the remaining convictions of assault by strangulation and assault with a deadly weapon inflicting serious injury were consolidated into a single judgment with a minimum of 25 months and a maximum of 42 months of imprisonment to run consecutive to the assault on a female sentence. Defendant entered notice of appeal in open court following sentencing.

## II. Analysis

Defendant raises three issues on appeal. He contends the trial court erred by: (1) denying Defendant's motion to dismiss all but one of the assaults; (2) entering judgment and sentencing on three assault convictions against statutory mandates; and (3) denying Defendant's motion to dismiss the charge of assault with a deadly weapon.

### A. Number of Assaults

Defendant first contends that the trial court erred by denying his motion to dismiss all but one of the assault charges. We disagree.

> A trial court's denial of a motion to dismiss is reviewed *de novo*. Upon a defendant's motion to dismiss, the question for the trial court is whether there is substantial evidence of each essential element of the offense charged and whether defendant was the perpetrator of the charged offense. "Substantial evidence is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."

*State v. Martin*, 292 N.C. App. 505, 510, 898 S.E.2d 371, 376 (2024) (internal citation omitted) (quoting *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)). "In reviewing challenges to the sufficiency of evidence, we must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences. Contradictions and discrepancies do not warrant dismissal of the case but are for the jury to resolve." *State v. Littlejohn*, 158 N.C. App. 628, 634–35, 582 S.E.2d 301, 306 (2003) (quoting *State v. Scott,* 356 N.C. 591, 596, 573 S.E.2d 866, 869 (2002).

In the case *sub judice,* Defendant was convicted of three counts of assault: (1) assault on a female under N.C. Gen. Stat. §14-33(c)(2); (2) assault by strangulation under N.C. Gen. Stat. §14-32.4(b); and (3) assault with a deadly weapon inflicting serious injury under N.C. Gen. Stat. §14-32(b). He contends he could only have been convicted of one assault because each physical contact may not result in a separate assault. Indeed, our Supreme Court has explained the Court "must look beyond the number of physical contacts with the victim to determine whether more than one assault has occurred such that the State can appropriately charge a defendant with multiple assaults." *State v. Dew*, 379 N.C. 64, 70-71, 864 S.E.2d 268, 274 (2021).

In *Dew,* the Supreme Court resolved previous discrepancies in how to determine if multiple assaults had occurred utilizing the "distinct interruption" test.

The Court provided an non-exclusive list of examples as to what qualifies "as a distinct interruption: 'an intervening event, a lapse of time in which a reasonable person may calm down, an interruption in the momentum of the attack, a change in location, or some other clear break delineating the end of one assault and the beginning of another.'" *State v. Robinson*, 381 N.C. 207, 218, 872 S.E.2d 28, 36 (2022) (quoting *Dew*, 379 N.C. at 72, 854 S.E.2d at 275). The Court also gave examples of what does not constitute a distinct interruption, including citing "distinct injuries alone" and "different methods of attack standing alone" as possibilities. *Id.*

This Court recently heard a substantially similar case to this one in which a defendant was charged with assault by strangulation, assault on a female, and assault inflicting serious injury. This Court found that even during a relatively short period of time, when the victim was able break free from the defendant and move to a different location within the home before the assault resumed that was enough to support distinct interruptions. *State v. French*, 299 N.C. App. 711, 716, 919 S.E.2d 336, 341 (2025). Similarly, in *State v. Tucker*, when the defendant "left the room, even if momentarily" during the assault to perform another action before returning to the victim, that was enough of a break in momentum to constitute a distinct interruption. 291 N.C. App. 379, 390, 895 S.E.2d 882, 891 (2023). Defendant contends because *Joye* never "escaped or broke free" the assault had to be continuous. We disagree.

The State's evidence tended to demonstrate that Defendant attacked Joye as

she sat on the toilet, punched her causing her to fall off the toilet, and then choked her while hitting her head against the bathtub until she lost consciousness. The first interruption occurred when Defendant stopped the momentum of the attack to pull down and secure the metal shower rod as his next weapon. He then resumed assaulting Joye by hitting her with the metal rod and kicking her. The second interruption occurred when Defendant paused his assault to drag Joye from the bathroom to the bedroom where he then left her alone for a period of time to put on his work boots and locate his belt. This second interruption changed the location, paused the assault for at least a few minutes, and altered the method of attack. When Defendant resumed assaulting Joye the third time, he whipped her with a belt and stomped on her with his work boots until he was exhausted by the effort and Joye was able to escape.

We conclude that much like the events in *French* and *Tucker*, the State's evidenced supported distinct points of interruption distinguishable from previous cases such as *Dew* and *Robinson* where the testimony indicated the assaults were "a continuous, non-stop beating" or an assault "without pause or interruption." *Dew,* 379 N.C. at 65, 864 S.E.2d at 270; *Robinson*, 381 N.C. at 219, 872 S.E.2d at 37. Accordingly, we conclude there were distinct interruptions in the assault sufficient to support three separate assault charges. Therefore, the trial court did not err in denying Defendant's motion to dismiss.

Defendant's second argument contends the trial court erred in entering

judgment and sentencing Defendant on three assault conviction based on the same claim that all three charges arose from a single assaultive episode. As we have held that distinct interruptions occurred to support the three separate charges, Defendant's second argument is without merit.

**B. Use of Deadly Weapon**

In his third and final argument, Defendant contends the trial court erred in denying Defendant's motion to dismiss the charge of assault with a deadly weapon inflicting serious injury when there was insufficient evidence that his hands and belt were deadly weapons. We disagree.

As noted *supra,* a motion to dismiss for insufficiency of the evidence is reviewed *de novo. Martin*, 292 N.C. App. at 510, 898 S.E.2d at 376. The offense of assault with a deadly weapon inflicting serious injury comprises the following essential elements: "(1) an assault (2) with a deadly weapon (3) inflicting serious injury (4) not resulting in death." *State v. Webster*, 291 N.C. App. 392, 397, 895 S.E.2d 898, 902 (2023) (quoting *State v. Aytche*, 98 N.C. App. 358, 366, 391 S.E.2d 43, 47 (1990)).

As there is no argument that an assault occurred but did not result in death, Defendant's argument rests on the elements of (1) serious injury and (2) status of body parts and belt as deadly weapons.

**1. Serious Injury**

"Our Courts have declined to define 'serious injury' for purposes of assault prosecutions, other than stating that the injury must be serious but it must fall short

of causing death and that further definition seems neither wise nor desirable." *State v. Lowe*, 154 N.C. App. 607, 615, 572 S.E.2d 850, 856 (2002) (cleaned up). "[A]s long as the State presents evidence that the victim sustained a physical injury as a result of an assault by the defendant, it is for the jury to determine the question of whether the injury was serious." *State v. Maloye*, 299 N.C. App. 283, 289, 917 S.E.2d 488, 493 (2025) (quoting *State v. Alexander*, 337 N.C. 182, 189, 446 S.E.2d 83, 87 (1994). "Pertinent factors for jury consideration include hospitalization, pain, blood loss, and time lost at work. Evidence of hospitalization, however, is not necessary for proof of serious injury." *State v. Woods*, 126 N.C. App. 581, 592, 486 S.E.2d 255, 261 (1997).

In the case *sub judice,* the State presented evidence that Joye was treated at the hospital and diagnosed with compression fractures of her thoracic spine at the T3 and T4 vertebrae, a head injury, and numerous bruises, contusions, and subconjunctival hemorrhages. She testified to serious and on-going pain, headaches, and scarring that have left her with "a whole lot of things [she] can't do." The records and medical testimony paired with Joye's testimony constitute competent evidence of a serious injury to be submitted to the jury. *Maloye*, 299 N.C. App. at 289, 917 S.E.2d at 493.

**2. Deady Weapon**

Our Supreme Court has considered "whether the term 'deadly weapon' as contained in N.C. G[en] S[tat]. § 14-17(a) includes an adult defendant's hands, arms, fists, or feet. . . ." *State v. Steen*, 376 N.C. 469, 480, 852 S.E.2d 14, 22 (2020). As a

general rule, a "deadly weapon" is one that is,

> likely to produce death or great bodily harm under the circumstances of its use, with the issue of whether a particular weapon is or is not deadly being one of fact to be determined by the jury in the event that it may or may not be likely to produce death, according to the manner of its use, or the part of the body at which the blow is aimed.

*Steen*, 376 N.C. at 481, 852 S.E.2d at 22 (cleaned up). This Court has repeatedly held, and our Supreme Court has affirmed, that a defendant's hands and feet can be deadly weapons sufficient to support a defendant's conviction for assault with a deadly weapon in violation of N.C. Gen. Stat. § 14-32. *See Steen*, 376 N.C. at 481, 852 S.E.2d at 23. There are several factors our Court has considered when evaluating whether hands and feet can be deadly weapons including the manner in which they were used, the relative size and strength of the parties, and the physical effects of the assault, *See State v. Allen*, 193 N.C. App. 375, 378, 667 S.E.2d 295, 298 (2008); *see also State v. Harris*, 189 N.C. App. 49, 60, 657 S.E.2d 701, 709 (2008). Additionally, "[a]ny weakness in the State's evidence or discrepancy between the State's evidence and Defendant's testimony [is] for the jury to consider." *Harris*, 189 N.C. App. at 60, 657 S.E.2d at 709.

In the case *sub judice,* the State proffered evidence that Defendant was a couple inches taller than Joye and at least "a little bit bigger." In addition, Defendant surprised Joye with the first hit, knocking her off the toilet when she was nude and vulnerable, and then banging her head against the tub causing her to lose

consciousness. Defendant continued using his hands to hit and choke a defenseless woman in a manner that not only left numerous bruises, contusions, and subconjunctival hemorrhages but also caused compression fractures of her thoracic spine at the T3 and T4 vertebrae and a head injury. This Court has previously held, and we do so again here, that when a defendant uses his hands to "hit and choke[ ]" a woman, his hand could be considered a deadly weapon based on the "manner in which it is used and the relative size and condition of the parties involved." *State v. Rogers*, 153 N.C. App. 203, 211, 569 S.E.2d 657, 663 (2002). The trial court did not err in denying Defendant's motion to dismiss the charge of assault with a deadly weapon inflicting serious injury.

## III.  Conclusion

The trial court did not err in denying Defendant's motions to dismiss when the evidence supported three separate assaults – assault by strangulation, assault on a female, and assault with a deadly weapon inflicting serious injury. Further, the trial court did not err in sentencing Defendant on all three assaults. Additionally, the trial court did not err is denying Defendant's motion to dismiss when the evidence supported all the necessary elements of assault with a deadly weapon inflicting serious injury. Therefore, we hold Defendant received a fair trial free from error.

NO ERROR.

Judges HAMPSON and MURRY concur.